Spring Term
1839.

3d 226
105 700

CHANCERY.       **Moon & Taylor *against* Story.**

[Mr. Owsley and Mr. Wheatly for plaintiffs: no appearance for the defendant until the petition for a re-hearing was presented.]

FROM THE LOUISVILLE CHANCERY COURT.

*April* 30.     Judge EWING delivered the Opinion of the Court.

One of the owners of the stock in a clothing store quarreled with his two partners, expelled & excluded them, & having the store, and goods, he took the account books, also, into his exclusive possession, and retained them, until they were forced from him by an attachment. But there is no proof (tho' it is alledged,) that he made any alterations in the books while they were thus in his possession; and the mere fact of taking the books, and refusing to give them up, in such a case, is not sufficient to prevent them from being at least *prima facie* evidence of the affairs of the concern. Three of the accountbooks were purloined from the auditor to whom the cause had been referred: but as the auditor had made abstracts of them, and there is no proof that the partner who was charged with it, took them, their contents, thus

This case was formerly before this Court, on the appeal of *Story*, and will be found reported in 3 *Dana*, 331.

Upon the return of the cause to the Circuit Court, it was removed by change of venue to the Louisville Chancery Court; where an order was made appointing an auditor to receive the books, take proofs, settle the accounts, and make report to the Court.

After much delay, the auditor made a report; to which exceptions were taken by both parties. Some of the exceptions taken by the defendant, were sustained, and a decree rendered in favor of the complainants, against the defendant, for two thousand three hundred and ninety five dollars, and eighty two cents, without interest thereon, and each party decreed to pay his own costs. And the partnership to be and remain dissolved, as decreed by the Circuit Court.

And an allowance of four hundred and fifty dollars is made to the auditor, in consideration of his trouble in examining, extracting and arranging the accounts of the co-partnership, from nine books, kept in an irregular and inartificial manner; from which and the evidence taken by him, and before in the cause, the materials were furnished for the final decree, and an order made that the complainants pay three hundred dollars, and the defendant one hundred and fifty dollars, of the amount.

From this decree, the complainants have appealed to this Court.

It is objected strenuously, that the books should be entirely excluded, upon the alleged ground, that they remained in the hands of Story, from the 14th of October,

Spring   Term
1839.

Moon  &  Taylor
vs
Story.

till the 2d of November, and were forced from him by attachment, and were so altered and mutilated by Story, as greatly to impair the rights of the complainants; and that three of the most important books were abstracted from the office of the auditor, where they were kept, before he completed his report.

We cannot sustain this objection.   There is an entire failure of proof to establish any alteration or mutilation of the books.   Nor is there any satisfactory evidence that Story purloined the three books that were missing. And if there was, the auditor reports that, he had, before they were withdrawn, taken abstracts of all the accounts from them, which he had carefully compared with the originals, and feels assured of their accuracy.   And the bare fact that one of the partners of the firm, who remained in possession of the house and stock of goods on hand at the filing of the bill, also retained possession of the books, and refused to give them up, is not, surely, sufficient to justify the entire exclusion of the books as *prima facie* evidence at least, of the affairs of the concern.

But while we concur with the Chancellor upon this point, we do not accord with him in his assumption of six thousand dollars, as the amount of capital stock put in by Moon & Taylor, upon the ground that that was the amount set up and alleged by them to have been put in, in their original bill.   We think, upon a full scrutiny of the terms of the original and supplemental bills, that the complainants should not be concluded, and restricted to that sum against the proof in the cause.

The original bill charges, in substance, that Moon and Taylor had agreed to enter into partnership, by which Taylor was to bring his stock of goods, then in Louisville, amounting to between two and three thousand dollars, into the concern; and Moon was to bring a larger amount from Cincinnati; and they were to open a clothing store in partnership, in a house rented

preserved, is also evidence.
Two traders,each having a stock of goods, entered in to partnership, and united their stocks. Soon afterwards, they ad mitted a third partner (for the sake of his skill &c.) who was without capital. A separation hav ing taken place, 6 or 7 months afterwards, the 2 first partners filed a bill in chancery, against the third, for a dissolution and settlement; in which bill, verified by their affidavits, they state the amount of the cap ital at *about* $6,-000. But the proof shows that the company did in fact, operate upon a capital of upwards of nine thousand dollars, consisting of the stocks which the first 2 had when they commenced, with additions from *their* separate resources, made at and after the time when the third came in:—as the original bill is not precise as to the amount of capital, & seems to refer to what was *first* put in by the original partners, and as an amended and supplemental bill both indicate that

there was a mistake in stating the amount of capital, in the original bill—it is *held* that the complainants shall not be restricted to the amount stated in that bill, as the sum to which they are entitled, as a return of capital, but shall be allowed all that the proof shows them entitled to—which, upon consideration of the facts and evidence, recited, is fixed at nine thousand dollars.

by Moon, on Water street. "And your orators each brought their goods into the concern, forming a stock to the amount of *about* six thousand dollars." About a week afterwards, it was agreed between the complainants and the defendant, that he should be taken into the concern, without capital; and in consideration of his knowledge of the boatmen, and skill as a salesman, he should have one third of the net profits—paying interest upon one third of the capital. Now, the allegation is indefinite in its terms—*about* six thousand dollars worth, and is confined exclusively to the amount of goods brought together into the firm of Taylor and Moon, when they *commenced* business, and does not exclude the idea of an accession to the amount before, at the time of, or after, Story came into the firm. Indeed, the statement can be made to apply only to the original stock brought together by Moon and Taylor, *before* Story was admitted into the partnership. It is clear, from the proof, that when Story came down from Cincinnati, to enter into the firm, that he brought down with him upwards of fourteen hundred dollars worth of goods, that had been purchased by *Moon* of Aulsbrook, a few days before. These goods went into the concern, and added to the stock that amount, *after* the *commencement* of the co-partnership between Moon and Taylor, and they cannot be construed to be embraced within the six thousand dollars worth charged in the bill as the original stock of Moon and Taylor.

So also, with respect to the one thousand dollars, mostly in English sovereigns, placed in the hands of Ingham, to purchase goods at Philadelphia, for the firm. That was advanced some time in June, after the partnership of Story & Co. commenced, and was *evidently* the money which Moon had gotten from Aulsbrook—an Englishman, not long from England, and not the proceeds of the firm. Other sums may, in like manner, have been advanced. And if it was admitted that a distinct statement by the complainants, of the precise amount of the *whole* capital invested by them in the firm, would limit and restrict them to the amount stated, it could not be conceded that an *omission* to state the

whole, or any amount of the capital, would preclude them from being allowed their capital, in the settlement of the accounts of the firm, provided the bill was broad enough in its allegations, to justify the settlement at all: no more than a failure to state every item of their credits on other accounts, would preclude them from an allowance of those not charged specifically.

Besides: on the next day after the filing of the original, an amended bill is filed, in which, though the precise amount of capital put in is not stated, there is a clear intimation of a *mistake* in the amount stated in the original; and the cause of the mistake, to wit, the hurry, excitement and confusion of the complainants, when it was drawn. And affidavits are exhibited, with the amendment, showing clearly that the amount of stock originally put in, greatly exceeded the amount stated in the original bill. And a supplemental bill is filed afterwards, in which thesame mistake is intimated.

It is very evident from the whole case, that the complainants, and especially Moon, were unskilful merchants, and perhaps did not perceive the necessity of keeping a distinct account of the capital put in originally, nor of the accessions to it; nor of discriminating between the purchases made by individual funds, and those that were made by the proceeds of the business; nor of stating, in the bill, precisely the amount of accessions made to the original stock by new acquisitions or purchases made with individual funds. And it would, in our judgment, be a technical rigidity incompatible with the genius of a court of equity, and not at all promotive of the ends of justice, to hold them to so strict a rule as that prescribed by the Chancellor under the circumstances before referred to, as to the manner and form of the averment.

But while we cannot concede, that they should be restricted to six thousand dollars, we have found it a difficult matter to arrive at a satisfactory conclusion as to the *precise* amount of stock that was put in. The books have been very loosely, unskilfully and irregularly kept; and the parol proof far from being definite or satisfactory upon this point. That the amount exceeded the

sum assumed by the Chancellor, we are satisfied.   For, on that assumption, the profits produced are excessive, beyond all just proportion to the amount of capital invested, and exceed all reasonable proportion the amount of profits which were found to have been made for the first four months and nineteen days, by Raverty, the clerk who was mutually employed by Story and Moon, after the ejection of Taylor, to make a calculation of the books, and who did make it, having all the books before him, and the parties present to make explanations, and afford the necessary aids, and who found the profits up to that time, not estimating the expenses, which were not brought into the account, to amount to nineteen hundred and forty five dollars fifty cents only.

The expenses, as now found by the auditor, for the whole six months and twenty days that the partnership continued, and deducted by the Chancellor from the gross amount of profits, amount to one thousand and ninety nine dollars ninety nine cents.  If a ratable amount of the expenses for the four months and twenty days, be deducted from the gross profits found by Raverty, the amount of net profits for that period, will not amount to quite twelve hundred dollars—without any deduction for bad debts.  Yet, according to the basis assumed by the Chancellor, the net profits for the same period and the two succeeding months, (which seems, from the report of sales, to have yielded no better daily profits than the preceding period,) amounts to thirty three hundred and ninety two dollars sixty cents—exclusive of seven hundred and twelve dollars ninety six cents, which he deducts for bad debts.

Nor can we rely upon the result of the auditor's estimate, as we have discovered several material errors in his calculations.  Nor do we confide in the *data* assumed by him, to arrive at the amount of capital.   We think the parol proof in the cause, strengthened by the facts deducible from the whole case, may be more safely relied on.  From these, we have come to the conclusion, that the capital invested was about nine thousand dollars.  Ann Aulsbrook proves that, by the repeated statements of both Story and Moon, in her presence,

that it was between eight and nine thousand dollars. It
does not appear precisely *when* these statements were
made, but it is most probable, as well from her evidence
as from other proofs in the cause, that they were made
before the thousand dollars was advanced to Ingham,
to purchase goods in Philadelphia. Assuming this to
be the case, and also assuming the lowest sum stated by
her, or eight thousand dollars, and adding to it the thou-
sand dollars sent by Ingham, and the sum of nine thou-
sand dollars is produced.

Again: Rogers, a practiced merchant, from a general
view of the goods brought together by Moon and Tay-
lor, before Story came into the establishment, estimates
their value at seven or eight thousand dollars. Assum-
ing his lowest estimate, and adding to the amount the
fourteen hundred dollars' worth purchased by Moon
from Aulsbrook, and brought down from Cincinnati by
Story, when he came down to enter into the establish-
ment, also the sum advanced to Ingham, and nine thou-
sand four hundred dollars is produced. Rogers, in a
mere general view, may have been mistaken in the
value, by four hundred dollars or more. Deduct the
four hundred dollars out of abundant regard for the
rights of Story, and the same amount is produced, as
that which we deduce from the testimony of the first
witness. And with a proper care for the rights of the
defendant, we do not feel disposed, from the proof, to
exceed this amount. For as the proof lies upon the
complainants, we should not exceed the lowest estimate
which their evidence establishes, and the more espe-
cially, as one of them was the book keeper, and should
have made a note, or kept an account, of the stock in-
vested, and when invested, and the other having ad-
vanced the greater part, and most probably the whole
of the stock, should have seen that the proper amount
was placed on the books, or so preserved as to afford
certain evidence of the precise sum. And we are the
less reluctant to fix upon the amount which we have, as
not below the true amount, as the result of profits will
ought to have kept the books so that they would show the true state of
fairs, and what each partner put into the stock.

Spring Term
**1839.**

*Moon & Taylor*
vs
*Story.*

Comp'ts claim
the amount con-
tributed by them
for the capital of
a partnership: the
proof shows that
they contributed
at least a certain
sum, and proba-
bly more; but as
the *onus proban-
di* is *upon them,*
as comp'ts, they
must be restrict-
ed in their recov
ery, to the small-
er sum; especial-
ly, where one of
them was the
book-keeper and
the company's af-

not be materially variant from a ratable increase for the accruing time, upon the profits found by Raverty, if a reasonable sum be deducted for bad debts, some of which must have accrued, even at that time.

Assuming nine thousand dollars as the capital invested, and the profits are easily ascertained by the *data* furnished by the auditor from the books, according to the process adopted by the Chancellor, namely, add to the capital stock $7853 46 the amount laid out for after purchases, also $1404 87, the amount expended to tailors and tailoresses, for making up garments, also $1099 99 for incidental expenses, and the sum of $19,358 32 will be produced as the outlay.

The cash sales are reported at $10,334 81; credit sales $4508 13; stock of goods on hand $6620 94, making, in the aggregate, the amount of $21,463 88. Deduct from this, the aggregate amount of outlay, also the sum of $712 96 reported as bad debts, and it will leave a net profit of $1392 60—the one third of which, or $464 20, Story is entitled to.

And, as Moon was the treasurer, and received from the drawers the cash on hand, after the daily expenses were discharged, and as there is no evidence that Story received, or appropriated to his own use, any of the cash other than the amount that is charged to him on the books, and as he is not charged in the bill with having received more, we accord with the auditor's report, and with the conclusion to which the Chancellor has arrived, in charging the cash received to Moon alone, and not any part of it to Story, but the amount charged on the books against him.

And as Moon and Taylor are joint complainants, it seems only necessary to ascertain the amount of Story's indebtedness to them jointly.

Charging him, therefore, with the stock of goods left in his possession—$6620 94; his individual account—$365 28; the sum paid to him by Hardy—$43, and the interest on one third of the capital, for six months and twenty days—$100, and the aggregate of his debts to the firm, will be seven thousand one hundred and twenty nine dollars twenty two cents. From which deduct

the amount paid by him to creditors—$3567 20, and his dividend of the net profits—$464 20, and it will leave him indebted to Moon and Taylor, $3097 82, which should be decreed in their favor against him.

This sum was justly due from him to the complainants, at the filing of the bill; and we can perceive no good reason why he should not be chargeable with interest from that period.

At that time, the partnership was virtually dissolved; one of complainants had, before, been forcibly ejected by the defendant from the concern, and the doors closed upon the other; and neither of them, from that time, have been permitted to derive any profits from the business. The defendant remained in possession of the store house and the stock of goods on hand, valued at costs, and has not been made to account for any of the profits from that time, but has applied the whole of them to his own use.

One member of a firm ejected his partners, and retaining possession of the store, retailed the stock upon his own account. Upon the bill of the ejected partners, for a dissolution and settlement, they obtain a decree for a considerable balance: the deft. is liable for interest on the balance from the time of filing the bill.

To the extent of the amount found against him, he was in the use and enjoyment of the capital of the complainants, or one of them. It was certainly worth legal interest; and in fact was worth more, if the business yielded the same profits that it had done. And cases are not wanting to establish the right of a seceding partner, or of a representative of one who has died, even to an equitable participation in the profits made by a copartner, who has continued to carry on the business on the capital of the firm, after a dissolution. *Hill* vs. *Burnham*, cited arguendo, 15 *Ves.* 220; *Brown* vs. *Vidler*, cited *Ibid.* 223; *Coxwell* vs. *Bromet*, cited *Ibid*; *Featherstonehaugh* vs. *Fenwick*, 17 *Ves.* 310. But according to the principle settled by this Court, at the last fall term, in the case of *Honore* vs. *Colmesnil*, 7 *Dana*, 201, he should certainly pay interest from the filing of the complainant's bill.

We also think that the defendant is justly chargeable with the whole costs, including the amount allowed to the auditor.

A partner whose unjust conduct has made it necessary for his co-partners to re sort to a suit in chancery to obtain a fair settlement, is liable to them for their costs—including what they have been taxed with as their share of compensation allowed to the auditor for investigating and adjusting the accounts.

And tho' the sum allowed the auditor, seems to be extravagant, as the party on whom the payment ultimately devolves, does not complain, and there is no *data* in the record by which the labor can be estimated—this court declines to interfere with it.

Spring Term
1839.

Moon & Taylor
vs
Story.

The complainants had just grounds for filing their bill, and have been substantially sustained in their demands, by this Court. Story was an irritable, restless and intemperate, if not a faithless partner; was constantly throwing obstructions in the way of a regular progress of business, and set up and contended for claims that had no foundation in truth, and which have been disallowed by the Court.

After the complainants have been delayed for years in resisting those unjust claims, and at length have arrived at a decree for a large balance due them, it would seem to this Court, not to comport with any rule of justice or law, to saddle them with any portion of the costs. Story, in our judgment, has been greatly in the wrong throughout.

An objection is made by the appellants, to the amount allowed to the auditor for his services.

The amount allowed seems to this Court, to be very extravagant, and to go greatly beyond a reasonable equivalent for the time and labor which it would seem necessary to expend in accomplishing the services confided to him.

But as no objection is made by Story, on whom the burthen falls, to the amount of the allowance here, or steps taken to correct it, in the lower Court, or proofs exhibited, or *data* furnished to enable this Court to come to any satisfactory conclusion, as to the precise amount that should have been allowed, we will not undertake to fix the amount, or to determine what reduction should be made, in the state of case exhibited by the record.

It is, therefore, the opinion of the Court, that the decree of the Chancellor be reversed, and cause remanded, that a decree may be rendered in accordance with this opinion—it being understood that, so much of the decree is to be retained as directs a division of the bad debts on hand, and that proper steps be taken to effectuate the division.

And the appellee is to pay the costs in this Court.

PETITION FOR A RE-HEARING.

[By Mr. Duncan.]

THE defendant in error, anxious to close this contro-
versy between him and the plaintiffs, determined to
abide by the decree of the Chancellor, although he con-
sidered the decree to have violated the former mandate
of this Court, to his prejudice.

After the defendant had paid off all the decree that
was not enjoined by creditors of plaintiffs, a writ of
error was prosecuted, and this defendant, relying, per-
haps too confidently, on this conviction, that the decree
was harder than it should have been, did not employ
counsel; and this Court have, upon an *ex parte* argu-
ment, rendered an opinion which he respectfully insists
is not consistent with equity, and the pleadings and
proof in the cause; and he, therefore, asks that a re-
hearing may be granted, on any terms that the Court
may think fit to impose.

He would ask the attention of the Court to the fact
that no receiver was appointed, and no order made for
the sale of the partnership property, or for a division
of it. The stock of goods invoiced at $6660 94, was
in the custody of the Court of Chancery. It was at
plaintiffs' instance ordered to be seized and *kept by the
officer*, unless the defendant would give bond with se-
curity, conditioned " *to take good and discreet care of said
goods.*" That bond was given, and the marshal returned
it, with an endorsement on it, as this record shows, by
which endorsement Story placed all the goods in the
possession of a respectable commission merchant—W.
G. Bakewell, for safe keeping, and subject to the order
of the Court; and the supplemental bill alleges this fact.
And when the order issued on the supplemental bill, the
Chancellor again required a bond, conditioned to take
good and discreet care of said stock of goods.

In that situation, this Court has subjected the defend-
ant to the estimated amount of this invoice, with interest
thereon, although the record shows that they were part-

nership goods, detained and locked up at the instance of plaintiff. It is respectfully insisted that, the decree, in this respect, was not consistent with equity, or with the former mandate of this Court, ordering the appointment of a receiver, and a disposition or division of the property.

It is contended, that Story had no right to sell or use the goods, and that there is nothing to justify a presumption that he had either purchased, or converted to his use, these partnership goods; and if they deteriorated in value, by remaining in store, the loss should not have been thrown on Story.

This Court says that plaintiffs ought not to be restricted to six thousand dollars, as their capital, upon their allegation, supported by oath, that their stock was *about* six thousand dollars, *against the proof in the cause.* It is respectfully insisted that the numberless cases, in which it is decided that, there must be allegation, as well as proof, to entitle a party to a judgment or decree, must be subverted, if upon an allegation that the stock of a partner was *about* six thousand dollars, he shall be permitted to prove nine thousand dollars.

But, for this case, it may be conceded that, the Court is correct in this latitudinarian construction of the word *about;* and that when a bill charges that a defendant owes a plaintiff about fifty thousand dollars, he may prove and recover seventy five thousand dollars, to wit, *fifty per cent. above* the sum named and specified. It may be conceded, for this case, because this Court, by implication at least, says that he ought to be restricted to the sum named, unless it would be *against the proof* so to restrict him.

Where that proof is, which would be violated by any such limiting of the plaintiffs to the amount that both of the plaintiffs swore was about the amount of their capital, the counsel for the defendant has not been able to find in this record. The plaintiffs' oaths, that their capital was about six thousand dollars, are certainly something for the defendant in the scale of evidence, to prove that they did not put into the firm a much larger sum.

And as it is clear in this cause, beyond controversy, both by allegation and proof, that plaintiffs were not only the cashiers of the firm, but also the book-keepers. And if there is a difficulty on this point, on whom does the blame rest? On Story, the working partner, without capital, or on plaintiffs, the capitalists, and the partners who had stipulated to make and keep a 'true record of this important fact? It is humbly urged that, to allow a partner who failed to keep the books which he was relied on to keep and promised to keep correctly, to prove nine thousant dollars capital, on his averment of a capital of about six thousand dollars, would tend to encourage fraud and break down all the rules that require precision in pleading.

The counsel, failing to find it in the record, has looked into the opinion, to find that mass of evidence which appealed so strongly to equity.

It is, first, that Story brought about fourteen hundred dollars worth of goods from Cincinnati, purchased by Moon from Aulsbrook, a few days before, which "*may* have added to the stock after the commencement of the co-partnership &c." The Court does not find such to have been the fact, but that, by possibility, *it may have been* the fact. Surely a bare possibility, that such may have been the fact, is not the certain, clear proof, which would outweigh the plaintiffs own claim as to amount. But it is respectfully urged that, upon the proof, *it is not possible* that such may have been the fact.

Take plaintiffs' own witness, plaintiffs' father-in-law, who testifies that he was in a state of personal hostility to defendant, and who shows himself to be vindictive towards defendant, and a willing witness for plaintiffs. J. Aulsbrook says, in substance, that Moon was in business in Cincinnati, and that he and Story bought Moon's whole establishment in Cincinnati, in February, and that Moon went down to Louisville; and that, in March, he, Aulsbrook, quarreled with Story, and that Story went to Louisville twice, to procure Moon to re-purchase his old stock; and that the last time Story went from Cincinnati to Louisville, to see Moon, he, Aulsbrook, went down also; and that, in Louisville, and after the 21st of

March, it was agreed between Aulsbrook, Story and Moon, that Moon should purchase from Aulsbrook, the whole stock in Cincinnati. He says, " Mr. Moon, before he left Cincinnati, furnished me with some funds to take up my first note due, which was in the hands of Carlisle and Mason; and Story left Cincinnati for Louisville shortly after, with his family, and I paid the note to Carlisle and Mason, a few days before it was due, and then came down to Louisville; *while here*, it was agreed between Moon, Story and myself, that Mr. Moon should take the whole concern off my hands, and find money for the notes as they became due. Immediately after, Story and myself returned to Cincinnati, and packed up the goods for Mr. Moon."

Read that deposition, and it is clear that Moon had no Cincinnati goods or store, except the one he sold to Aulsbrook and Story, and after the 21st of March, he re-purchased from Aulsbrook.

Remember that Moon and Taylor allege, that they agreed to form a partnership about the 1st of April. Moon was then in Louisville, and it is clear he had no store in Cincinnati, except the said goods he had previously sold to Aulsbrook and again re-purchased. The goods and fixtures amounted to nineteen hundred dollars, when Moon sold, and some of them had been sold before Moon re-purchased them. These were the goods brought down by Story.

I ask a careful perusal of the original bill and of this deposition of Aulsbrook, and claim that upon them, it is impossible that the goods brought down by Story, may be different goods from that Cincinnati stock which Moon, about the 1st of April, agreed to put in with Taylor's.

But the next proof which it appears to the Court would be violated by holding plaintiffs to their express allegation, is the thousand dollars in sovereigns, placed in Ingham's hands, to purchase goods for the firm. That sum was advanced in June, and does form part of the dealings of the firm, and is properly so treated.

Those sovereigns were got by Moon, as the cashier of

the firm, from Aulsbrook; and the papers of the firm show, in fact, the cancelled check of the firm on the bank, in favor of John Moon, for this identical money, which check, as luck will have it, is payable to John Moon's order and endorsed, dated the 6th of June, 1831. That check is in the papers, and is or ought to be, in the record, and as this petition is drawn from the original papers, if, by any chance, that cancelled check is not in the record, and this fact is to be entitled to the weight given it by the Court, it is not too late to allow a rehearing to have it brought up.

The Court seems to argue that, if Moon, the acknowledged cash-keeper and financier of the firm, had gone to a bank, and on the check of the firm, bought a draft on Philadelphia, or, if he had gone to a broker, and with the funds of the firm, or with the firm's check, had bought gold or U. S. paper, that such a fact was an argument that the plaintiffs had put in more capital than they swear they did put into the firm. And the plaintiffs' counsel respectfully asks for a certiorari, or order, to bring up the papers, to show that very cancelled check, in favor of John Moon, which evidently bought that thousand dollars of sovereigns.

The auditor very properly took that thousand dollars into the account of the transactions of the firm; but it never entered into his head, or that of the Chancellor, that it could constitute any portion of plaintiffs' capital. As well might every other bill of parcels purchased by the firm, swell plaintiffs' stock, as these goods purchased in Philadelphia with *par* funds procured by the firm. This Court says, "other sums may in like manner have been furnished." The auditor charges these sovereigns and the Ingham purchase as part of the firm purchases.

The Court says, in the opinion, that on the next day, after filing the original, an amended bill is filed, in which, though the precise amount of capital put in is not stated, there is a clear averment of a mistake in the amount stated in the original.

Now, with due deference, the defendant's counsel asks a reperusal of that amended bill, and claims that there is no such reading in it. It does not allege, or pretend, or

Spring Term
1839.
Moon & Taylor
vs
Story.

insinuate, that the *amount of capital* put in, had been mis-stated, or mistaken.  If such a construction can be put on it, defendant's counsel is so unfortunate as not to be able to see it.  But he will here copy from that amendment: " when their said original bill was drawn, they did not take into consideration the *amount due the firm* of Story & Co. on the books; nor did they include all the purchases of goods made since the partnership was entered into, when they stated the stock &c. on hand to amount to six thousand dollars."  Can the Court construe this into an averment touching the amount of original capital stock?  Does it not exclusively relate to the amount on hand when the bill was filed?

The Court is asked to look at J. Aulsbrook's affidavit, with that amended bill.  He says, that the stock of goods which was originally put up in the brick store on Water street, in Louisville, was, or the greater part of the same, sold by this affiant to W. W. Moon.  As this affiant believes no other goods were put there else, except some which he is informed and believes was brought into the concern by C. F. Taylor and four boxes coats &c.

Again: this Court, in the opinion, run into a most singular error in stating what the supplemental bill contains.  That supplemental bill does *not, as the Court* says, assert, or re-assert, any such mistake as to the capital stock of plaintiffs.  And it is singular that such an error shall have been fallen into, when that supplement indirectly re-affirms the allegations of the original bill as to the stock being six thousand dollars.  I quote it that you may not again overlook it:—

" Your orators here beg leave to state, that a capital stock of nine thousand dollars (which is claimed in this bill, to be the amount of merchandise and debts due the firm in October, 1831,) at such a stand, in the clothing business, in the city of Louisville, can with industry and good management be turned, sold out and renewed from three to four times in twelve months, at a net profit upon the entire amount of sales, of 25 per cent.  They are warranted in making this statement, by the profits which they themselves made whilst engaged in business at said stand.  The said Story having had then capital

of about that amount *since the* 19*th October,* 1831, up to the present time, must have made, by that estimate, the sum of about four thousand dollars net profit, by turning said capital at least twice since he has been in business alone."

What capital had he? Plaintiffs claim that he had their capital and debts and profits, making together, in October, nine thousand dollars, from April to October, six thousand dollars at that rate, grew to nine thousand dollars; and from nine thousand dollars, he must have made four thousand dollars, from October to May. It is a clear indirect allegation, that the original capital, in April, did not exceed six thousand dollars.

The apology made by the Court for Moon's dereliction of duty, in not keeping the books, and of his ignorance and want of skill, does not appear. to the counsel to be a just commentary on the evidence or pleadings.

If a man profess to be able to keep accounts, and promise to do it, I had thought that reason, law and equity held him responsible for all consequences resulting from a failure. If a man undertake to do even an impossible thing, he must suffer for his folly, says Lord Holt. If he undertake to do a possible thing, he must be answerable for his neglect.

The counsel for defendant would respectfully ask the Court to look at the inconsistency apparent on the face of the opinion itself. At one time, the Court says, plaintiffs ought not to be held to their allegation "*against the proof*." And soon after says, " the parol proof is far from being definite or satisfactory on this point."

The Court will please to examine the extract above, from the supplement verified by oath and by proof also, and compare it with their argument, drawn from the unreasonableness of making such large profits as the auditor found to be the fact. Plaintiffs say their stock was about six thousand dollars, and that they knew it was a fact, that they made twenty five per cent. net profit every 90 days, on the whole capital. How does a net profit of $3392 on a capital of $6000, disagree with either allegation or proof? It could be turned in ninety days, at 25 per cent. say plaintiffs; which would make

$7500; which, in ninety days, with twenty five per cent. added, would a little exceed $3392. The Court assume that this would be monstrous and unreasonable! If the Court be correct, they are virtually saying to plaintiffs— and without any proof to warrant it—on this subject, in your bill, you have sworn to a positive lie, and there- fore, we will relieve you from this false allegation, and upon our own judgment, dehors the record, of what is a reasonable profit, we will, for your benefit, and although you have failed to do your duty, decide this material point against Story, directly against your doubled allegations and all the proof.

It would swell this petition to a most unreasonable length, to recapitulate the *data* on which the auditor's es- timates are made. Those *data* are nothing but known, fixed and proven facts in this cause, and, in most in- stances, the very allegation of plaintiffs and the records kept by plaintiffs. This Court say they cannot rely on his *data*. Is not this strange? Is it not a reflection on the administration of justice, of itself, that a fact found and reported by any auditor, is not to be relied on. Does this Court mean to say, that his copy of the lost book is not a true one. I say *any auditor*, because I do not mean to rely on the high character, or subsequent confidence reposed by the constitution in the Hon. J. J. Marshall. I concede that the constitution and laws pre- sume that this individual has less legal knowledge than this honorable Court; but I claim that a decent respect for the acts of our judicial tribunals, does require that the facts found by any auditor, as the *data* of his calcula- tions, are not to be disregarded by a Chancellor, even if errors happen to appear in his subsequent calculations; and that such *data* are not likely to be overturned or disregarded, and certainly not against averment and proof.

The Court say, "the parol proof is not definite or satisfactory;" and from that they argue thus: "the parol proof *strengthened by the facts* deducible from the whole cause, may be more safely relied on." The counsel had deemed the correct process of reasoning was from known and established facts, to infer or deduce legitimate

conclusions; and not to strengthen the proof by the in-
ferences from the established facts.

The deposition of Ann Aulsbrook, it is contended, is
not entitled to the weight given it, and does not satisfac-
torily prove a stock of nine thousand dollars.

Nor does W. C. Rogers. He is given a force and
weight that will encourage blind guessing to be substi-
tuted for proof, and to outweigh the allegations of the
party. He says he went in, and looked at store of
goods, and thought they were worth about a certain
sum, without examining, measuring or making any thing
like an account—a mere fire at the lump—a sworn guess-
er, and evidently a willing witness; and this proof is
made to outweigh plaintiffs own allegation.

And here again the Court goes into estimates, predi-
cated on the erroneous positions that the Cincinnati
stock is to be put in and counted, and then counted over
again, and that gold purchased by the firm with firm
funds, months after the firm commenced, was to be re-
garded as original capital.

The Court comes to the conclusion, that Moon and
Taylor received the money and kept the books, and as
Story only gave a bond to keep safely six thousand six
hundred and twenty dollars worth of partnership goods,
as estimated by appraisers (though Story denies that
they are worth so much,) the only material question
is, to ascertain what Story is entitled to as his share of
profits. This Court finds those profits thirteen hundred
and ninety two dollars only, on nine thousand dollars
capital, which complainants swear would have yielded,
and did actually yield, a net profit of at least 25 per
cent. every three or four months, and thus reduce Story's
share of profits to four hundred dollars.

And then this Court charges a partner interest on
capital and profits, during the pendency of a suit to
settle the partnership, when the plaintiffs' supplement
and the bond returned and the order of the Court show
that Story did not have the funds, or the use of the
funds, but that the very goods were seized and tranfer-
red to Mr. Bakewell, under a bond to use good and dis-
creet care in regard to their preservation.

Spring Term
1839.

Moon & Taylor
vs
Story.

The Court assumes—it is humbly contended, in direct conflict with the allegations and proof, that the capital was nine thousand dollars; and from it, make the profits thirteen hundred dollars—less than 16 per cent. for upwards of six months, when plaintiffs swear to and prove, 25 per cent. every three or four months. Whilst, on the contrary, by following the averments and partnership books, they all harmonize, and make the profits near what plaintiffs allege: to wit, 25 per cent. profit, on all purchases, and a turn over of the capital every three or four months.

*G. Duncan,*
*for defendant.*

June 15.

RESPONSE TO THE PETITION.

[By Judge Ewing.]

THE Court has carefully re-examined the record, and are perfectly satisfied that the amount decreed against Story is not too much. And had the counsel been as vigilant and careful in the examination and exhibition of *all* the statements and proofs bearing upon the points discussed by him, as he has been acute and hasty in his criticism upon the argument of the Court, he would have found less ground to complain so heavily of the result.

We still think that, it is inferable from the whole tenor of the amended and supplemental bills, that a mistake was made in the statement of six thousand dollars as the capital.

But if we are wrong in this conclusion, *it is perfectly* evident that the statement in the original bill had reference only to the capital that was brought together when Moon and Taylor *first commenced* business on Water street, and does not attempt to state the amount of *the whole* capital which they put into the firm of Story and company. It would therefore seem strange to the Court, and a perversion of all the rules of justice, to say that their *omission* to state the true amount of the whole capital put into the latter firm, should preclude them from

being allowed, in the settlement of the accounts, the full amount which they might prove they had put in.

Nor does the statement as made, furnish any foundation for the inference that they did put in no more. And especially as it is proven by several unimpeachable witnesses, that Moon and Taylor were carrying on the business in partnership several weeks before Story was admitted as a partner; and when he came down from Cincinnati, to enter into the partnership, he brought with him the fourteen hundred and odd dollars worth of goods, which Moon had purchased from Aulsbrook, and which was then, for the first time, put into the firm.

Besides: if his counsel had continued his extract from the affidavit of Aulsbrook, exhibited with the amended bill, a little further, he would have perceived by it, that Aulsbrook states, that the four boxes of coats, &c. put in by Moon, was estimated by Story, at three thousand dollars; and the whole amount of Moon's part of the stock, which was *then* put in, was about five thousand dollars, exclusive of the part brought in by Taylor, which would make in all, about eight thousand dollars.

The cancelled check to John Moon, is not found in the record before us; and the *certiorari* asked by the counsel, to bring it up *now*, upon his *bare suggestion*, cannot be allowed. The precedent would tend to the encouragement of negligence, and a loosness in practice, which forbids the extension of the indulgence asked. And if it were brought up, we are not prepared to admit that it would change the result.

This court will not order a *certiorari*, after a decision, upon the mere statement of counsel, *in a petition for a rehearing*, .that a paper of importance was used in the case, that does not appear in the record.

Besides the proof in the cause, going pretty clearly to show, that a capital of at least nine thousand dollars, was invested in the concern—the auditor, (whose report the counsel travels out of his way to defend,) by a process of calculation founded on the advance of sales upon cost which he assumes, brings out a capital of nine thousand eight hundred and ninety nine dollars sixty -eight and three fourth cents, and finds Story in debt to Moon and Taylor, four thousand one hundred and twenty dollars ninety five cents, besides interest from the filing of the bill.

He assumes twenty five per cent. as the advance of

sales upon cost. And if this *datum* could be admitted as correct, in deducting the per cent. advance upon sales, he deducts the twenty five per cent. calculated upon the whole aggregate amount of sales, when that per cent. calculated upon the amount of the original cost only, should have been deducted. But the correction of this error would make the capital still greater, and would leave Story still more indebted than the auditor has made him. So, if the position intimated by the counsel, be correct, that this Court should not question the auditor's report, the capital invested by Moon and Taylor, exceeds ten thousand dollars; and his client stands indebted some twelve or fourteen hundred dollars more than the amount found against him by the decree of this Court.

Had the counsel examined the testimony of Bakewell, he would have found that, so far from the stock of goods on hand, being treated by Story as in the custody of the law, he went on to retail them, and only a few remnants remain in the possession of Bakewell, of the original value of six hundred and forty four dollars sixty one cents, and which are estimated now to be worth not more than one fourth, or one third, of their original cost. It would be strange justice that would require Moon and Taylor to take these remnants, or any share of them, after Story had sold out by retail, the articles that were salable, and pocketed the profits made upon them.

As he had converted a part, and was not charged with the profits, he was properly charged with the whole at cost, including the remnants.

The petition is overruled.