## JOHN DAVIDSON

### *vs.*

## BENJAMIN WILSON.

*New Castle, February T. 1869.*

Upon a bill filed by one member of a former copartnership against the other member of the firm, praying an injunction against the collection of a judgment recovered against the complainant for a partnership debt, neither the legal nor equitable plaintiff being made parties, but the collection being pressed by the former copartner of the defendant in the judgment, *Held*, that no injunction could be granted to restrain the collection of the judgment, unless the plaintiff and the party for whose use the judgment was held, were made parties to the proceedings.

An injunction, if issued in such a case, would be ineffectual and nugatory as a means of staying proceedings upon a judgment, and a court of chancery ought not to interfere at all, except in a mode which would be effectual for the purpose of the decree.

If the proof, in such a cause, presented a case for the interference of the Court, its duty would be to order the cause to stand over with leave to add the proper parties.

A denial by the answer, which is directly responsive to the bill, makes it incumbent upon the complainant to prove his allegation by the testimony of two witnesses, or of one witness with corroborating circumstances.

It is a rule of law as well as of charity that when the facts proved may be harmonized with the answer, the Court shall rather do that than impute perjury to the defendant. The Court ought not to be left to rest a decree, which is to restrain the legal rights of a party, upon evidence merely circumstantial, so long as there are sources of direct information to which the complainant might have resorted, and has omitted to do so.

Where the partnership books were lost and there was on the record all the evidence which, apart from the books, was available, an order for a partnership account refused because it would have been impossible upon, the bill, answers and testimony, to state any account.

The Court will never undertake to adjust the rights of parties without satisfactory means of ascertaining what their rights are, and when an account cannot be safely stated and the true balance between these parties ascertained.

BILL FOR AN INJUNCTION AND FOR A PARTNERSHIP ACCOUNT.—The complainant and defendant became partners under a contract for building part of the Hudson River Railroad, the work commencing in the fall of 1847, and ending in the spring of 1850. The business became a losing one. Debts of the partnership were left unpaid, for some of which actions were prosecuted against the partners, some in the State of New York where judgments were recovered against Wilson, and some in Philadelphia and in Delaware where judgments were recovered against Davidson. The present proceeding arose out of a judgment for $300.00, recoverd in the Superior Court of this county against Davidson at suit of Eli Bronson for the use of William Harvey. This judgment was recovered in an action against Wilson and Davidson as partners, founded on a judgment previously recovered against them in the State of New York. To restrain the collection of that judgment was chiefly the object of this bill in equity, but the whole relief sought by the bill includes two objects.

1st. An injunction against the judgments.

2nd. A partnership account and a settlement by Wilson of the balance which Davidson alleges would, upon

such account, be found due to him. First as to the prayer for an injunction.

*Patterson*, for the complainant.

*E. G. Bradford* and *Higgins*, for the defendant.

THE CHANCELLOR :—

To the relief prayed for in this cause, there is a preliminary objection which must be first noticed. It is the want of sufficient parties to the bill. Bronson and Harvey, who, according to the record, are parties interested under the judgment, are not parties to this proceeding. Clearly no injunction could be decreed as against them, *i. e.*, to restrain the collection of the judgment by them, their attorneys or agents, unless they were made parties here. They must be heard on the question, whether this judgment has been satisfied, before their legal rights can be interfered with. In this suit, as it now stands, an injunction could be decreed only against Wilson. But against him alone an injunction, as a means of staying the collection of the judgment, is wholly ineffectual and nugatory. The judgment might still be collected by Bronson, or by Harvey. Then, what results ? This Court ought not to interfere at all, except in a mode which shall be effectual for the purpose of its decree, that is, to restrain the collection of the judgment by any person ; and, therefore, supposing the proof, presently to be examined, should satisfy the Court that this is a case for its interference, its duty would be to order the cause to stand over, with leave to make Bronson and Harvey parties to it. I shall, therefore, proceed to examine the ground relied upon to support the prayer for an injunction, not with a view to decree for it at present, but in order to see whether

a sufficient case is presented to justify an order holding the cause open for the additional parties.

The alleged ground of relief against the judgment is, that the original judgment was recovered in New York in the absence of Davidson, he being a resident of Delaware, and in his utter ignorance of that action, or of the transactions on which it was founded ; that after the service of summons upon him in the action in Delaware, upon examining the record of the New York judgment, supposing it to have been unpaid, and suspecting no wrong, he, under the advice of his counsel, confessed this judgment for $300.00 :—that since such confession he has discovered that the judgment in New York had been paid by Wilson, though not satisfied of record, and that the proceeding here was set on foot and presented against him by Wilson alone, and for his benefit, without the knowledge or authority of Bronson, the original plaintiff, or of Harvey, for whose use it stood indorsed.

It is upon this question of fact that the present branch of the case rests, viz. : had the New York judgment been paid by Wilson, and was the action upon it in Delaware prosecuted for his benefit ?  The defendant flatly denies this ; first, in his answer to the original bill, and again, and more explicitly, in his answer to the supplemental bill filed April 6, 1866.  He states that he never had paid the judgment in New York, that the same was purchased from Bronson, the orginal plaintiff, by Hugh Clark, of Philadelphia, and by his direction marked to the use of Harvey ; that Clark purchased the judgment with his own money, without (Wilson's) privity or knowledge ; that the purchase was made during Wilson's absence from Philadelphia, and that he knew nothing of it until after his return, when Clark called on him for information as to Davidson's place of residence ; that the claim was placed by Clark in the hands of his Attorney in Philadelphia, Horn R. Kneass, Esq., who sent it for collection to Hon.

Leonard E. Wales, then at the bar in this county, by whom the action was brought. Wilson denies that he ever, had or now has, any interest in the money sought to be recovered, or interest in its collection other than that, by means of it, Davidson should be obliged to contribute something to the debts of the firm, the largest portion of which he (Wilson) claims to have paid.

This denial by the defendant, of the alleged payment of this judgment, and of its being prosecuted for his use, being directly responsive to the bill, makes it incumbent upon the complainant to prove his allegation by testimony of two witnesses, or, with one witness with corroborating circumstances. In this, the complainant's case for an injunction fails. There is no direct testimony, whatever, to the question, whether this judgment has been paid by Wilson. The evidence relied upon to prove that the judgment had been paid by Wilson, and was prosecuted for his use, is wholly circumstantial, and rests upon these facts, which are proved. An intimacy subsisted between Clark, who was an Alderman in Philadelphia, and Wilson, who resided in the same city. They had divers business transactions together, Clark was Wilson's real estate agent, collected his rents, and, in one instance, held, in his own name, some real estate, which was sold by the sheriff, under the defendant's judgment, as Wilson's, and was recovered in an ejectment against Clark, who then paid a sum of money toward satisfaction of the judgment in order to obtain a release of the title. The testimony of Garwin, the tenant, to some declarations made by Clark, proves that this property, though held by Clark, belonged to Wilson. Connected with these relations between Clark and Wilson, it is proved that, although Clark died in June, 1862, a month after the suit in Delaware was brought, his executors knew nothing of this claim, and had no agency in its prosecutions. It came to the hands of Judge Wales, then at the bar, from Horn R.

Kneass, Esq., of Philadelphia, since deceased ; but whom Mr. Kneass represented, Judge Wales did not know.

He never heard from Clark or Clark's executors in relation to the claim, nor from Bronson or Harvey. For two years he received instructions from no one, and one suit brought by him had been nonprossed for want of security for costs : then Wilson called, gave him a retainer to renew the suit, and thenceforth, as the Judge states, the suit was prosecuted "at his (Wilson's) "instance, and for his benefit." That is the strongest view of the complainant's case on this point which the testimony presents. Does it. then, overcome the defendant's positive denial that he had paid this judgment, and was pressing it in order to collect the money for his one use ? On much frequent reflection, I think not. The circumstances are suspicious, but they are too inconclusive to outweigh the positive denial of the answer. That feature of the case which excites suspicion, viz: Wilson's active agency can be accounted for by an interest on his part to release himself by getting the claim collected out of Davidson. This and all the circumstances relied on can be reconciled with the truth of the answer. It is a rule of law, as well of charity, that where the facts proved may be harmonized with the answer, the court shall rather do that, than impute perjury to the defendant.

There is another consideration on this point, of much force : The Court ought nôt to be left to rest a decree which is to restrain the legal rights of a party, upon evidence merely circumstantial, so long as there are sources of direct testimony to which the complainant might have resorted, and has omitted to do so. Yet, Bronson, the original plaintiff in the New York judgment, is living, and his place of residence, West Chester county, New York, is disclosed by the answer in direct response to an interrogatory of the bill. Harvey, for whose use the judgment stands of record, resides in Philadelphia.

Neither of these persons, to one of whom payment of the judgment must have been made, if made at all, has been examined. Whatever their knowledge might have been, much or little, the Court is entitled to receive it before being called upon to interfere with existing rights at law. On the whole, therefore, I should not feel warranted upon the case, as it stands, to make this injunction perpetual.

We next consider the prayer for a partnership account. The subject-matters sought to be embraced within such an account are three.

*First.* The sums contributed by the respective partners to the capital employed. Davidson alleges that, although they were to contribute equally of labor and capital, Wilson neither gave labor nor capital, while he (Davidson) contributed largely of both In fact the original bill alleges that Davidson advanced all the money used in the work over and above the income received from it, such excess amounting to over $3000.00, in cash, expended by him, exclusive of claims against them, unliquidated. He claims that Wilson owes him, on the score of capital advanced, upwards of $12,000.00 or $14,000.00. The annexed bill is more specific as to Davidson's advances. It states that he advanced $900.00 to commence the work in 1847, $300.00 in January, 1848, and $500.00 in 1849, making in all $1700.00.

The *second* subject-matters of such an account, if taken, and which would be essential in order to ascertain the exact rights of the parties, would be the sums of money received by these partners, respectively, upon the monthly estimates and their disbursements ; how much money each received, how they applied it, and how the balance would stand between them with respect to these receipts and disbursements. Davidson alleges, on information, that Wilson drew $28,000.00, upon the monthly estimates, $520.00 from the Peekskill Bank, and $4950.00 from Wilson and Brown, of New York. An account for these sums is insisted on.

40

The *third* matter of account, sought for by the complainant, is an excess of payments, which he claims to have made since the work closed, towards the liquidation of the partnership debts.    The only claim, however, which is specified as paid by him since the dissolution of the partnership, is the judgment to John O. Cole, in the Superior Court, for $400.00.    This is the sum stated in the amended bill ;  but in fact the judgment was for $300.49, and Davidson paid, upon the testimony of Mr. Rodney, $300.00 on the 4th of October, 1853, and $62.00 on the 23rd of November, 1853.

This prayer for an account, with respect to the first two matters referred to, viz :  the advances of capital and the receipts and disbursements by the respective parties, the Court is obliged to refuse, upon a ground common to both ; that is, that the partnership books, which alone can afford evidence for stating such an account, are lost.    It is presumable that we have, on this record, all the evidence which, apart from the partnership books, is available.    The entire knowledge of the parties themselves is set forth in the bill and answers, and all witnesses having any acquaintance with these transactions have been examined.    The industry shown in procuring testimony, must be supposed to have reached every available resource.    But it would be impossible upon the bill, answers and testimony, to state any account.    The bill and answers are flatly contradictory, and, as between these, the weight of the testimony supports the answers.

Consider them first as to the advances of capital, which Davidson alleges, he alone made in sums amounting to $1800.00, Wilson paying nothing.    The answers deny that Davidson put in altogether exceeding $520.00 to $530.00. Devlin, who became a partner and the bookkeeper in January, 1849, and who, as he says, then examined the books and made a balance sheet, swears that up to that time, as shewn by the books, Davidson had put in not more than

$300.00 ; that he afterwards put in some $200.00 or $300.00 ; that his default in making up his share of the capital was a subject of occasional conversation between Davidson and Wilson, in his (the witness') presence, and was acknowledged by Davidson ; that under Wilson's urging, he went to Delaware to get more money, and returned with a small sum, how much witness does not remember, but not exceeding $100.00. Against this is only the testimony of William Galloway, who swears that Davidson paid considerable sums to wages and bills ; he supposes some $2,000.00 per month. But whence this money came witness does not state ; and that it was received from the monthly estimates and paid out of his own pocket must be presumed from the evidence of Devlin respecting the amount of his advances as shewn by the books and admitted in the communications with Wilson. It is also clear, from his claim, by the amended bill, to have put in sums not exceeding $1,800.00, that these payments on the road were not advances of capital by him, but disbursements of funds received from the work. For one month's disbursements exceed all the capital he claims to have put in. With respect to advances by Wilson, the bill alleges there were none made, the answer claims that Wilson did advance money, though in what sums is not stated. But Devlin swears that, according to the books, Wilson had advanced more than Davidson, and that there was no complaint between the parties of any delinquency on Wilson's part.

Next we inquire, how stands the evidence on the other matter claimed to be the subject for an account, viz : the receipts and disbursements of the monthly estimates ? The bill alleges that Wilson drew $2,800.00 from the railroad company, beside $520.00 from the Peekskill bank, and $49.50 from Nelson and Brown, in New York. The answer disclaims any knowledge as to the $49.50 ; admits he drew from the Peekskill bank between $200.00 and $300.00, on

Davidson's check, which, he alleges, he handed to Davidson.
Against the answer on these points, which is responsive,
there is no evidence. With respect to the monthly esti-
mates, the answer to the amended bill wholly denies that
Wilson drew $28,000.00, admits that he drew from $8000.00
to $10,000.00, the exact amount of which he cannot state
in the absence of the books, but avers that all sums
recovered by him were disbursed in the work ; and
the answer on this point further charges that Davidson
drew, upon the estimates, from $20,000.00 to $22,000.00.
With respect to the amount of estimates drawn by Wilson,
and how he disposed of them, the answer is responsive,
and is not impeached by the evidence. But on the con-
trary it is supported by the proof. For it appears from
Devlin's testimony, that after he came into the business in
January, 1849, Wilson drew the estimates, except two or
three, which Devlin drew. The estimates, after Devlin
came in, were about $12,000.00, and of these the amount
drawn by Wilson would appear to be some $8000.00 or
$10,000.00, the sum admitted in his answer. As to the
estimates made before Devlin came in, January 1, 1849,
amounting to over $18,000.00, it does not appear, by any
direct evidence, who drew them ; but Galloway's testi-
mony that Davidson, during that period, paid the wages
and bills to the amount of $2000.00 per month, together
with the fact that Davidson, by his amended bill, only
claims to have put in $1800.00, and the proof that, in fact,
he put in only from $500.00 to $600.00, all raise the
presumption that the estimates during that time, however
drawn, came to his hands for disbursement. There is, in
the evidence, ground to believe that the estimates drawn
by both the partners were honestly disbursed on the
work. Galloway's testimony renders this probable on the
part of Davidson, and Devlin proves it, positively, on the
part of Wilson. He states that, except when he drew the
estimates himself, he gave the estimates to Wilson, who
drew them and deposited the several accounts with him,

(Devlin) ; and that they were disbursed on the work, in part by himself, and, in fact, on orders drawn by Wilson. He is quite positive that all the money drawn was duly disbursed.

Upon the question, then, of ordering an account, I am brought to this conclusion. That all the evidence, short of the last partnership books, which can throw any light upon the subject-matters of such an account, is already before me ; that it is too indefinite and uncertain for the statement of an account ; moreover, that so far as it goes it is against the complainant, and supports no claim to an account, at least, on his part. The result of any attempt to state an account without the books must be wholly unsafe as a basis of a decree for the payment of a balance between the parties. The Court will never undertake to adjust the rights of parties without satisfactory means of ascertaining what their rights are, and if, as in this case, the account cannot be safely stated, and the true balance between these parties ascertained, I can proceed no further. The loss of the books is the misfortune of the parties, and they must bear its consequences. *Millar vs. Craig*, 6 *Beavan*, 433. It will be observed that I lay no stress on the charge made by the answer, that those books were last in the possession of Davidson. It is not necessary to take up that question.

The result which, in the investigation we have reached, is, that being unable to ascertain the state of the account between these parties at the termination of their work, we can charge neither, and must treat the case as if the partnership account was, at that time, balanced between them.

Then we are brought to the one remaining claim of Davidson, viz : that Wilson shall contribute for the payments which he (Davidson) claims to have made since the close of the work, towards the then outstanding partnership liabilities,—payments made with his own money after

the full disbursement of such partnership funds as he had received. With respect to these alleged payments, no order for an account is necessary. All the evidence available to the partners, touching payments made by them, respectively, since the dissolution, towards the liabilities of the partnership is before the court, and there is sufficient proof to enable the court to dispose of the complainant's claim for contribution on this score. The only debt of the partnership, discharged by the complainant, was the judgment of John O. Cole, upon which he paid $300.00 on the 4th of October, 1853, and $62.00 on the 23rd of November, 1853. For one-half these sums, and of the interest from the dates of the respective payments, Wilson is liable, except so far as he may have proved a corresponding claim for contribution toward debts of of the partnership paid by him. Wilson, by his original answer, claims that in addition to having disbursed, in the work, all partnership funds received by him, he had paid with his own money, a number of partnership debts shewn by schedule "A", annexed to the original answer, amounting to over $4000.00, and the like claim was made in his additional answer of February, 12th, 1867, to which schedule "B" is annexed, setting forth the same debts more particularly, but in a further answer of January 20th, 1868, he admits himself to have been mistaken in his former answers, as to all the debts set forth in the schedules, except two debts, which he still claims to have paid. Both these were debts due to the Depews, one being a debt of $350.00, for which no judgment had been recovered, and the other being a judgment recovered by the Depews, in the District Court of Philadelphia for $2070 66, in June 1850. Wilson's allegation that he had paid the $350.00 due the defendants, and not covered by their judgment, is proved. Isaac Depew and Charles A. G. Depew, the survivors of the Depew firm, both swear that this claim has never been paid to them. The allegation of the answer is that it was paid to Mr. Thayer as their

attorney, and Mr. Thayer was inquired of under the commission issued to Philadelphia, as to whether he had not received payment of this debt from J. Alexander Simpson, as attorney for Wilson. Mr. Thayer expresses an indistinct recollection that Mr. Simpson once paid him some money in reference to these matters, but does not remember the amount, or precisely what it was for, but that it was in some way connected with the suit of the Depews against Wilson and Davidson. This falls short of proof that it was the debt of $350.00, not in suit which was paid. The whole bearing of Mr. Thayer's testimony, and all the circumstances, negative this allegation. Then, with respect to the judgment of the Depews for $2,070.66, the whole of this judgment Wilson claims to have paid out of his own funds. It is not disputed that, of this judgment, $301.00 was raised by Sheriff's sale of property levied on as Wilson's, and that to one-half of this sum with interest, say from December 31st, 1850, Wilson is entitled to contribution. The precise time of this sale does not appear, but it was under a *venditioni exponas*, as of December term 1850, and hence I take December 31st, 1850, as the nearest approximation to it. Setting this payment by Wilson with its interest, against the judgment of Cole, and its interest paid by Davidson, there remains a difference against Wilson of less than $100. The precise amount need not be calculated ; because, upon the case as presented, it sufficiently appears that Wilson paid the whole of the defendant's judgment. So it is alleged by the original answer, and more particularly by two of the additional answers; and on this point the answers are directly responsive to the bill, which alleges that such of the partnership debts as had been paid, were paid by Davidson, and some by Wilson, and accordingly interrogates Wilson, expressly, as to what sums and debts of said late firm have they, this complainant and the defendant, respectively, paid, and whose claims ? The answer must be accepted unless it has been disproved. Let us then see if there be

sufficient contrary proof. Mr Thayer, to whom the answer alleges that Wilson paid the money, testifies, apparently, to the contrary. He states that he received it from Hugh Clark, under these circumstances. Clark held certain real estate which the Depews treated as belonging to Wilson and levied upon it under their judgment. Wilson's title was sold by the Sheriff to the Depews for $301.00. Afterwards the Depews proceeded in ejectment for the property against Clark, pending which suit Clark paid the balance of the judgment to Thayer, as attorney for the Depews, in consideration of a release of their title. Subsequently, under authority of the Depews, their judgment was satisfied of record. Does, then, Thayer's statement that he received the money from Clark overcome Wilson's answer that he paid it ? I lay out of consideration the testimony of the Depews, who had no personal knowledge on the subject ; so that the question rests upon a comparison of the answer, and Thayer's testimony. Now, under the technical rule which requires something more than the testimony of one witness to countervail a responsive answer, Mr. Thayer's sole statement would not be sufficient as countervailing proof, even were it irreconcilable with the answer. But taken in connection with all the attending circumstances the testimony and the answer may be reconciled. The answer is, generally, that Wilson paid the judgment to Mr. Thayer, not necessarily in *propria persona;* it may have been through Clark, from whom Mr. Thayer, in fact, received it. The circumstances, independently of the answer, strongly lead to the conclusion that it was Wilson's money which paid the judgment, though Thayer received it from Clark. I accept that as the proper conclusion from the answer, and Mr. Thayer's testimony. The result is that Davidson's claim for contribution towards his payment of the Cole judgment is more than overcome by Wilson's counter-claim upon the Depew judgment.

In the answer, the defendant claims that, upon a just settlement between this complainant and himself, he would

be found entitled to balance due from the complainant, and he prays that the complainant may, by a decree, be compelled to pay such sum as shall be due from him. I do not, however, feel authorized to proceed further than to dissolve the injunction against the collection of the Bronson judgment, and to dismiss the bill as to all relief prayed for, and shall decree accordingly.