# Adams, Appellant, *v.* Hubbard.

221  511
s227  305

*Partnership—Dissolution—Accounting—Division of capital—Account stated.*

Where two partners dissolve their copartnership, and a statement of account prepared by one of them shows the amount of contribution to capital by each of them, and the agreement to dissolve shows that a liquidation of assets was contemplated, and that a possible shrinkage of assets was anticipated, one partner cannot assert as against the other that the statement of account was an account stated, and that the amount in his favor was fixed and could not be reduced by a subsequent shrinkage in the value of assets.

Where a partnership is dissolved and its affairs are wound up, there must be a return of the firm capital to the partners contributing it, in order that there may be a distribution of the profits. Each partner's contribution is regarded as a firm debt to such partner, which must be repaid before there are any profits to be divided. Where one partner has advanced capital in excess of another, the amount advanced is a preferred claim upon the property of the firm. The distribution of capital upon dissolution is in the same proportion in which such capital was furnished.

Argued April 1, 1908. Appeal, No. 5, Jan. T., 1908, by plaintiff, from decree of C. P. No. 4, Phila. Co., June T., 1906, No. 543, on bill in equity in case of John Quincy Adams v. George L. Hubbard et al., surviving partners of the firm now or late trading as George K. Hubbard & Company, and Dilworth P. Hibberd, Administrator, substituted in place of George L. Hubbard. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an accounting of partnership assets.

The opinion of AUDENRIED, J., was in part as follows:

The partners were George K. Hubbard, who had a five-eighths interest in the business, and John Quincy Adams, whose interest was three-eighths. By this is meant that these two parties were entitled to share in the profits of the partnership venture, and bound to bear its losses in the proportions mentioned. Hubbard was the head of the firm. Adams had

a particular charge of its bookkeeping. On November 30, 1892, the firm was dissolved by a verbal agreement, which was subsequently embodied in a written memorandum dated November 30, 1892.

By a statement of the firm's condition on December 1, 1892, prepared by Adams, it appears that the assets were on that date reckoned at $176,029.08. This estimate was based in the case of certain items on their appraised valuation, in the case of other items on their book value. Sundry insurance rebates, copyrights, trade-marks and old merchandise unappraised were excluded from the estimate. The liabilities of the firm were estimated at $104,192.76. It appears also by this statement that Hubbard had contributed $49,005.56 to the firm's capital, and that Adams had contributed $22,030.76.

The formal agreement of dissolution signed by the partners was as follows:

" This agreement made the 30th day of December, 1892, between George K. Hubbard and J. Quincy Adams, heretofore trading together under the firm name of George K. Hubbard & Company is wholly dissolved except as far as may be necessary for the final liquidation and settlement of the business thereof.

" It is agreed and understood that the said George K. Hubbard shall continue the business heretofore carried on by the late firm of George K. Hubbard & Company. That he shall take, hold and keep the merchandise and partnership assets which he desires to retain and keep for that purpose at prices to be agreed upon between the said parties. (This does not include the trade-marks and copyrights owned by the said firm of George K. Hubbard & Company.)

" It is agreed that the remaining partnership assets, merchandise and other property which shall not be taken and kept by the said George K. Hubbard will be sold to the best advantage of the said parties.

" It is agreed that the said George K. Hubbard shall take the store, fixtures and teams heretofore used by and belonging to the late copartnership for $3,350.

" It is agreed that the said J. Quincy Adams shall retire from the said firm of George K. Hubbard & Company, and shall take an advanced payment on account of the distribu-

tion to be made in final settlement of the said partnership affairs as follows :

" One store and contents situate in New Jersey, $1,200 ; one store and contents in W. Philadelphia for $4,359.81 ; cash, $2,140.19.

" It is also agreed between the parties that the premises situate at the corner of Twelfth street and Diamond street shall be valued and appraised at the sum of $3,500, subject to a mortgage of $5,500, and that the said J. Quincy Adams shall have the right and privilege of taking the said premises should his share of the partnership assets upon final settlement distribution exceed the sum of $3,500, in addition to what has been already advanced under this agreement as before set forth, to wit : the sum of $7,700."

Other facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the adjudication.

*J. Barton Rettew*, for appellant.—An " account stated " between partners will not be opened save for fraud or mistake, and the evidence as to fraud or mistake must be clear, precise and indubitable : Varner's App., 16 Atl. Repr. 98.

*D. P. Hibberd* and *Samuel P. Tull*, for appellees.

OPINION BY MR. JUSTICE POTTER, May 25, 1908 :

The firm of George K. Hubbard & Company, which was composed of George K. Hubbard, J. Quincy Adams and Edwin Halpen, was organized June 1, 1876, for the purpose of carrying on a wholesale grocery business in the city of Philadelphia. On June 1, 1883, Halpen retired from the firm, having assigned his interest to his copartners, and Hubbard and Adams continued the business under the same partnership name until 1892. Hubbard owned a five-eighths interest in the firm, and Adams a three-eighths interest. On November 30, 1892, the partnership was dissolved by mutual consent, the terms of dissolution being afterwards embodied in a written agreement signed by both parties under date of December 30, 1892. A statement prepared as of the date of dissolution, from the private ledger of the firm, showed that as

regarded the capital account, the amount to the credit of George K. Hubbard was $49,805.56, and the amount to the credit of J. Quincy Adams was $22,030.76, and the sum of these two amounts represented the net assets over liabilities, provided that all the assets could be converted into cash at the amount at which they were carried upon the books. In accordance with the agreement, George K. Hubbard took as much of the merchandise of the old firm as was acceptable to him, and the store fixtures, etc., and formed a limited partnership which continued the business under the same name and at the same location. On February 27, 1895, George K. Hubbard died, and letters of administration were granted to George L. Hubbard.

On July 9, 1896, J. Quincy Adams filled this bill for an accounting against the surviving partners of the firm of George K. Hubbard & Company, and the administrator of George K. Hubbard, deceased. An answer was filed and the case was put at issue and referred by agreement to Horace M. Rumsey, Esq., as referee. On September 10, 1901, the referee filed an interlocutory report, recommending a decree for an accounting by the administrator of George K. Hubbard, deceased, only. Upon exception, the court in an opinion by ARNOLD, P. J., held that the complainant was entitled to an account, as found by the referee, and sent the case back to the referee to take further testimony and report the facts and law thereon to the court, together with a proper form of final decree. In his opinion Judge ARNOLD used this language: " We are also of opinion that the account stated between the parties at the time of the dissolution of the partnership in December 1892, shall be considered as a finally stated account, and not open to correction at this late day. By it Mr. Adams' share of the assets of the co-partnership amounted to $22,030.76."

It is upon this language of Judge ARNOLD that counsel for appellant bases his main contention in this controversy. In fact the only thing which he presents in his statement of the question involved, is whether this account in the private ledger, existing at the time of the dissolution of the partnership, was an account stated between the partners which fixed conclusively the amount which was due to the plaintiff and

payable to him, without regard to the actual liquidation of the assets, and their conversion into cash thereafter. The referee found upon further consideration of the account, after it was sent back to him, that while the settled balance between the partners as of November 30, 1892, precluded him from going back of it to inquire into any errors or omissions which might have existed in that respect, yet it did not prevent him from taking into consideration the items of which the account was composed, nor the elements which entered into the balances due to each partner. This was the plain common-sense construction of the statement of Judge ARNOLD, and if he did not mean it to be so understood, his statement was clearly wrong. He could not have intended to say that the amounts shown by the account represented a net amount of money on hand in the treasury of the partnership, and ready to be drawn out by the partners. Manifestly the actual amount to be divided would depend entirely upon what could be realized out of the assets. And when the final report of the referee was made to the court below, Judge AUDENRIED, in passing upon it, said : " It is proper to add here that when we said, after hearing the argument on exception to the interlocutory report of the referee, that the account stated ' at the time of the dissolution of the partnership in December, 1892, shall be considered as a final stated account and not open to correction,' we had reference only to its effect so far as it fixed the respective contributions of the partners." So that the court below fully adopted and approved the view of the referee in this respect. And that this statement was not intended to set forth the amount due in cash to the partners, but represented only the condition of things as shown by the books at this date, is conclusively shown by the agreement subsequently signed by both parties dated December 30, 1892. This agreement recited that the partnership is dissolved " except so far as may be necessary for the final liquidation of the business thereof." It further provides that Hubbard, who continued the business, may take partnership assets " at prices to be agreed upon between the said parties." Assets not so taken by Hubbard " will be sold to the best advantage of the said parties." It was further agreed that Hubbard was to take the store fixtures and teams at a specified price, and Adams was to have two stores and a

specified amount in cash "as an advance payment on account
of the distribution to be made in final settlement of the said
partnership affairs." Adams was also to have the premises
at the corner of Twelfth and Diamond streets, appraised at
$3,500, subject to a mortgage of $5,500, "should his share of
the partnership assets upon final distribution exceed the sum of
$3,500 in addition to what had been already advanced under
this agreement as before set forth, to wit, the sum of $7,700."
This whole agreement clearly contemplated a liquidation of
the assets. If they realized the amount at which they were
carried upon the books, the amount shown to be due the part-
ners could be paid, but otherwise not. Whatever shrinkage
might result in the assets would reduce by that much, the
amount for actual distribution. And when we recall the fact
that this statement as made up included the sum of $116,849.09
of open book accounts, it is not at all strange that there
should have been considerable shrinkage in converting them
into cash. Accepting, therefore, the statement of the account
of December 1, 1892, for what it really was as showing the
settled amount contributed by each partner to the capital of
the firm, the learned judge of the court below took the view
that these contributions to capital were to be repaid before
there could be any division of the profits. He stated Hub-
bard's contribution as $49,005.56, which seems to involve a
clerical error of $800, as the figures in the private ledger
account are $49,805.56, but appellee has accepted this slip
without complaint. The contribution of Adams is $22,030.76.
As a result of the findings of the referee, approved by the
court, the net balance in Hubbard's hands as liquidating part-
ner, was $23,139.40, and the total amount received by Adams
was $14,210.93, making total assets of $37,350.33, which, de-
ducted from the capital account contributed by both partners
of $71,036.32, shows a loss of $33,685.99. This loss was to be
shared in the proportion of five-eighths to one partner and
three-eighths to the other. So that, crediting Hubbard with his
contribution to the firm, $49,005.56, and charging him with the
amount received by him, $23,139.40, and his proportion of the
loss, $21,053.75, total $44,193.15, leaves a balance of $4,812.41
due him. Charging Adams with the amount received by him,
$14,210.93, and his proportion of loss $12,632.24, makes

$26,843.17, which is in excess of his amount contributed to the capital by $4,812.41, which is awarded to Hubbard's estate and thus balances the account.

The method pursued by Judge AUDENRIED was entirely correct, and is in accordance with the authorities which are well summed up in 22 Am. & Eng. Ency. of Law (2d ed.), 86, 87, as follows : " Where a partnership is dissolved and its affairs are wound up, there must be a return of the firm capital to the partners contributing it, in order that there may be a distribution of the profits. Each partner's contribution is regarded as a firm debt to such partner, which must be repaid before there are any profits to be divided. Where one partner has advanced capital in excess of another, the amount advanced is a preferred claim upon the property of the firm. The distribution of capital upon dissolution is in the same proportion in which such capital was furnished."

A Pennsylvania case clearly establishing this principle and applying in its facts to the present case, is Plumly's Appeal, 1 Mona. 177, where the master said (p. 178): " When the partnership came to an end, December 31, 1884, it was the plaintiff's right to have the assets converted into money, to have all liabilities to non-partners satisfied therefrom, and, out of what remained, to have returned to each partner his capital. If there was not sufficient for the return of the capital of each, the sum that was wanting should have been treated as a partnership loss: Nowell v. Nowell, 7 L. R. Eq. 538; and paid as other losses are payable; and, as has appeared, that was two-thirds by the defendant and one-third by the plaintiff." In this particular the report of the master was confirmed by the court below, and by this court.

What we have said disposes of the questions raised by the assignments of error covered by appellant's " Statement of Question Involved." The remaining assignments of error are not properly before us, but if they were, it would be sufficient to say that they relate to questions of fact, upon which the findings of the referee have been confirmed by the court below, and therefore they would not be disturbed except for manifest error. Nothing of that kind has been shown.

This appeal is therefore dismissed, and the decree of the court below is affirmed.