CASE 88—PARTNERSHIP—FEB. 17.

# Thomas v. The Winchester Bank.

APPEAL FROM CLARK CIRCUIT COURT.

1. PARTNERSHIMP—SETTLEMENT—INTEREST.—A partner who pays firm debts individually after the firm has ceased to be a going concern, is entitled to interest on such payments.

2. SAME—PRESUMPTION.—In a settlement of partnership accounts all presumptions of fact will be indulged against a partner upon whom rests the obligation to keep accurate accounts of the business and who has failed to do so.

3. SAME—CONTRIBUTION OF CAPITAL.—A contribution of capital by a partner in violation of the implied contract between the partners will not entitle the contributing partner to a like contribution from his co-partner.

BECKNER & JOUETT AND W. S. PRYOR FOR APPELLANTS.

J. M. BENTON, EDWARD W. HINES AND WILLIAM LINDSAY FOR APPELLEE.

(Transcript and briefs not in the office.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

On the former appeal, 17 Ky. Law Rep., 194, [28 S. W., 774], it was adjudged that the appellant, Thomas, was a member of the firm of M. H. Clay & Co.; so that question is behind us. The appellee, supposing that M. H. Clay was the owner of the property which turned out to belong to the firm of M. H. Clay & Co., sued him and sought to subject property of the firm to the payment of an individual debt which it held against him. Clay was the managing partner; the appellant, Thomas, giving but little attention to the partnership affairs.

This partnership must be settled as if the suit was pending between Thomas and Clay. The bank

is not entitled to anything in this action, unless it is ascertained that Clay has an interest in the partnership assets that can be subjected to the payment of its debt. The mere fact that Thomas trusted Clay, and had great confidence in his integrity, can not militate against the right of Thomas to invoke the application of equitable principles in the settlement of the partnership affairs. Presumably, men who enter into a co-partnership have confidence in each other, or they would never hazard their reputations and estates by such a business association. In the settlement of the partnership business between Clay and Thomas, Clay certainly would be in no condition to ask Thomas to be deprived of his rights because he was so unfortunate as to have given him his confidence. That would be an exceedingly strange ground upon which to resist the application of the equitable rules which should govern in the settlement of partnership affairs. If Clay could not complain because Thomas had confided in him to manage the partnership affairs, an individual creditor of Clay, who seeks to subject Clay's interest in the partnership assets to the payment of an individual liability, can not be heard to do so. The concern was engaged in the maunfacture of lumber, etc., involving many transactions and accounts, and it was essential that an accurate set of books should have been kept of the transactions of the firm, and there was an obligation upon Clay, as the managing partner, to see that this was done; but this he failed to do. Partners who have charge of the business of the firm are bound to keep accurate accounts of the business. It is important that such accounts should be kept and ready at all times for inspection. Bates in his work on the Law of Partnership (volume 1, section 313) says: "And if one partner

has the duty of keeping the books, and does not do so properly, every presumption will be against him; he may be charged with interest, if no account of profits can be given; he will be charged with sums coming into his hands, unless their application to joint benefit is most satisfactorily proved."

Thomas' net contribution to the firm capital was $6,889.31. Before the transaction took place to which we will hereafter refer, Clay had contributed but a small sum, comparatively, to the firm capital. It appears that he forged the names of his grandfather and father to notes, had them discounted at banks, and in that way realized about $61,000. This sum he deposited in banks to the credit of the firm of M. H. Clay & Co. Thomas was not aware of this fact. It was not entered upon the firm books in which the partnership accounts were kept, but seems to have been placed upon the pass books of the banks which he used. This was put in the name of the firm, evidently, for the purpose of covering up his fraudulent and dishonest transactions, and not as a contribution to the firm's capital. Thomas was able to show that about $37,000 of this sum was not used by Clay for the benefit of the partnership business, and the testimony in the record is not satisfactory that the balance of the $61,000 was used and went *finally* to the benefit of the partnership.

It appears in this record that there is no way to know what Clay spent for individual purposes or for firm purposes. There is no evidence in the record that any loss had been sustained in the conduct of the business, but it appears from the testimony that Clay spent several thousand dollars in gambling. Estimating the tangible property at its

appraised value, and the accounts due the firm at the time the property was attached, the partnership assets amounted to $25,000. Fixing its value at what the tangible property brought at forced sale, and the amounts realized upon accounts and notes due the firm, the partnership assets amounted to about $15,000. If Clay contributed to the firm capital $24,000, as claimed by the appellee, the $6,000 contributed by Thomas makes the total sum invested about $31,000. Estimating the value of the assets at the time of the filing of this action at $25,000 there is a discrepancy between the assets and contributions of some $6,000. To estimate the assets at $15,000, then, there is a discrepancy between the assets and the contributions of $16,000. In this speculation no account is taken of the debts of the firm. Now, if there was no loss in the conduct of the business, Clay must have, upon one hypothesis, expended of the $24,000, outside of the business, $6,000, and upon the other, about $16,000 of it. The net contributions made by Thomas and Clay about which there can be no doubt, added to the debts of the concern, make a sum about equal to the amount realized on assets. As these comparisons are intended to be merely suggestive, it is not necessary to give exact figures. When we consider the character of his business transactions, his dishonest practices, and his gambling habit, together with the fact there was no loss proven in the conduct of the business, it would seem very probable indeed that these discrepancies might be accounted for upon the theory that Clay never permitted as much of the money which he realized by his forgeries to go into the business as claimed by the appellee. Considering these conditions,

the question arises, what is the just and equitable way to settle the partnership affairs? It would be a gross wrong against the rights of Thomas to give Clay credit for a contribution of $24,000, if he did not, in fact, make it, or if he made it to compel Thomas to contribute an amount equal to such unauthorized contributions of Clay. The commissioner in this case evidently reached the conclusion that Clay had made such a contribution, because Thomas was unable to show how much of that sum had been finally used by Clay for his individual purposes; so the commissioner credits Clay with the net contribution of $24,000, and makes a statement of account so as to require Thomas to make an additional contribution of the difference between the amount which he had already made, something over $6,000, and the $24,000, Clay's net contribution. The judgment of the court below was to the same effect. Assuming that it was an equal partnership, then if Clay actually contributed the sum stated, it was done without the knowledge or consent of Thomas. The partnership books had no account of such a contribution. In view of the fact that it was to be an equal partnership, it is unreasonable and inequitable to require Thomas to contribute a like amount. Clay's contribution if made, was in violation of the implied contract. It appears that the partnership business ceased in consequence of Clay's dishonesty, and by the effect of this action Thomas was compelled to pay between eight and nine thousand dollars of the firm debts, and there were no firm assets in his hands with which to pay them.

Whilst the court has a serious doubt as to whether Clay should be credited with $24,000 as his net contribution to the firm capital, we have concluded, under all the circumstances in the case, that, after the payment of the

firm debts out of the assets of the firm, whatever remains shall be divided between the two partners in proportion to the amounts of their respective contributions, which are as follows, to wit: Thomas $6,889.31; Clay $24,170.77. In doing this, we bear in mind that the general rule is that partners must contribute ratably to their shares towards the loss and debts of their firm, and where it is an equal partnership they should share equally in the profits and loss of the concern. The right to obtain indemnity or contribution usually arises from an agreement, but in the absence of such agreement an action may be maintained to compel contributions, in certain states of case. The partner who makes a contribution in violation of an agreement can not compel another partner to contribute a like amount or sustain a loss which resulted from that unauthorized contribution. In this case, Clay made the unequal contribution, if at all, without the knowledge of Thomas, and concealed it from him. It is not reasonable to suppose, for one moment, that Thomas would have become a partner of Clay if he had known he was to be required to contribute an unlimited amount to the firm capital, or that he was to be bound to contribute an amount equal to every unauthorized and surreptitious contribution which Clay might choose to make; and to make Thomas, in this proceeding, contribute a like amount, in our opinion, would be unjust and inequitable. The court below allowed Thomas interest on the sums which he paid after the partnership ceased to be a going concern. We think this was right. He had none of the assets of the firm in his hands with which to pay these debts, and it was not a *contribution* to the capital of the firm, but the payment of the firm's debts.

Counsel for appellee has cited no case to follow which

would lead to a different conclusion. In reaching this conclusion, we do not disregard the rule that partners are not entitled to interest on contributions made to the firm capital.

We think the conclusion is supported by Wolf v. Levi, 17 Ky. Law Rep., 1024, [33 S. W., 418]. In that case it appeared that certain members of the partnership, pending the litigation for the settlement of accounts, borrowed money on their individual credit for the purpose of paying partnership debts which were falling due, and the court adjudged they were entitled to be reimbursed the interest which they paid. In this case, Thomas had no assets of the firm in his hands, as they had been seized by an individual creditor of Clay. He expended his own money for the purpose of meeting partnership obligations, and we perceive no just and equitable reason why he should not be allowed the sums thus expended, with interest thereon. The commissioner charged it, and the court so adjudged interest on the fund in the hands of the appellee arising from the assets of the partnership. Thomas had been deprived of the use of it for the purpose of meeting the obligations of the concern, and the appellee has enjoyed it, and we think it but just and right that it should account for interest on the fund.

The rule announced in Moon and Taylor v. Story, 8 Dana, 226, and Lee v. Lashbrooke, Id., 214, supports the view expressed.

There are some other questions raised in the case, but we have reached the conclusion that the court below did not err in passing upon them.

The judgment is reversed on original, and affirmed on cross-appeal, and for proceedings consistent with this opinion.