In Re Partnership Estate of ADAMS & LESTER, AMELIA J. LESTER (MRS. M. H. LESTER) Administratrix, Appellant, v. THOMAS B. ADAMS, Administrator of Partnership Estate, Respondent.

In the Kansas City Court of Appeals, December 31, 1923.

1. PARTNERS AND PARTNERSHIP: Dissolution: In Absence of Agreement, Proportions of Profit and Loss Presumed Equal. In the absence of an agreement or evidence as to proportions of profit and loss to be divided between partners, the presumption is in favor of the equality of the shares, and it makes no difference whether one partner contributes all the capital and the other only services or skill, for the court cannot set a proportionate value upon these respective contributions.

2. ———: ———: Partners Contributing Capital upon Dissolution Held First Entitled to Amount Contributed at Commencement of Partnership Before Remainder of Assets Should be Equally Distributed. In an appeal from an order distributing assets of a partnership where partnership agreement provided one partner was to furnish his services and contribute all of the capital to purchase stock of merchandise and the other was to furnish his labor, services and experience, and to share in the profits only, held the partner contributing the capital was upon dissolution of the partnership first entitled to amount contributed by him at the commencement of the partnership, and the remainder of the assets should then be equally divided between the partners.

Appeal from Circuit Court of Carroll County.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Lozier & Morris* for appellant.

*S. J. & G. C. Jones* for respondent.

BLAND, J.—This is an appeal from the order of the circuit court distributing the assets of a partnership. The partnership was one between T. B. Adams and M. H. Lester and was entered into on March 10, 1897, by a written agreement. Under this contract the partnership conducted a retail drug business in the town of Norborne, Missouri, under the name of Adams & Lester. Lester died October 21, 1921, and the respondent, the surviving partner, was appointed and is now acting as administrator of the partnership estate. Amelia J. Lester was appointed and is now acting as administratrix of the individual estate of H. M. Lester, deceased.

The stock of goods and fixtures were destroyed by fire on November 18, 1921. There was a policy of fire insurance in the sum of $5000 on the property, which was paid and the money is now in the hands of the administrator of the partnership estate. On March 13, 1922, the respondent filed a petition in the probate court of Carroll county for an order of distribution of the partnership estate between himself as surviving partner and the appellant as administratrix of the estate of the deceased partner. In the petition the respondent stated that he had on hand the sum of $7247.68 in cash; that all debts and demands against the partnership estate had been paid and that no debts, claims or demands could legally be presented and allowed against said estate. The petitioner prayed that the sum of $3261.41 be paid to him for capital advanced in the organization of the partnership, and that the remainder be divided equally between

himself and appellant. The appellant filed an answer to the petition alleging that Adams had contributed the total sum of $6630.70 to the capital stock and Lester $3369.29 and that the amount of money in respondent's hands to the extent of $5000, representing the insurance money, was capital stock and that the balance was profits and asked that the $5000 be distributed according to the contributions which each partner had made to the capital stock aforesaid. The probate court made an order of distribution in accordance with the theory of appellant and respondent appealed to the circuit court, resulting in a judgment in the latter court that Adams was entitled to $3261.41, the amount he contributed at the commencement of the partnership, which should first be paid to him, and that the remainder of the assets be equally divided between Adams and the Lester estate. The administratrix of that estate has appealed.

The material parts of the partnership agreement are as follows:

"This partnership agreement made and entered into this the tenth day of March Eighteen Hundred and Ninety-seven, Witnesseth: That Thos. B. Adams has purchased the entire stock of Drugs, Medicines, fixtures, etc., of E. E. Sibert which he furnishes for said partnership together with his labor & services; that M. H Lester furnishes his labor, services and experience, that after all expenses of said partnership and the sum of Two Hundred Dollars interest, on money borrowed by said Adams and put into the purchase of said stock, are paid the profits of said partnership are to be shared equally.

"The profits are to be determined by an inventory to be taken each year on March the eighth or as soon thereafter as practicable. In each inventory the goods purchased by Adams from Sibert are to be inventoried at the price paid by Adams to Sibert; all other goods to be inventoried at their actual & exact cost.

"Said Adams agrees to buy all the goods necessary for the business of said firm and to discount the bills

therefor, said partnership to have the benefit of all discounts. After the payment of the two Hundred Dollars interest above referred to, neither M. H. Lester nor the partnership shall be held for, charged with or be liable for any money borrowed by Adams for the purchase of goods or for any other purpose or for any interest thereon.

"It is agreed and understood that M. H. Lester is a partner in the profits ONLY and that he has no interest in or claim on the purchase price paid by Adams to Sibert or in, or to, any cash or money put into or added to said business by said Adams. It is further agreed that each of said partners may draw from said business not to exceed the sum of Fifty-five Dollars per month or Six Hundred and Sixty Dollars per year.

"It is agreed that no purchases are to be made by one member of the partnership without consultation with and consent of the other member.

"Said Adams is to have the right to withdraw any money put in by him for the necessary purchase of stock at such times only as said partnership has the money to pay same, and if said cash so added is not withdrawn before the inventory is taken, it shall at that time be deducted in like manner as the capital stock from the inventory of the business. Each partner is to be charged with all goods he may take from said stock for the use of himself or family at the actual cost thereof only."

The evidence shows that at the time of the fire the value of the goods and fixtures was $9500. The only witness to testify was the surviving partner, Adams. He testified that he and Lester took an inventory of the stock and fixtures every year after they went into business. The purpose of taking the inventory was mainly in order to meet the demands of the insurance company in case of fire but was also in pursuance of their agreement. He further testified—

"As the years progressed our business was prosperous all the time from its beginning on down to the

215 Mo. Sup.—39.

time of the fire. We made money and each of us drew out each year an equal amount of profits and each year we left in an equal amount of profits, according to our agreement. We each left in a certain amount of our profits. An equal amount was left by each of us. Mr. Lester left in just as much of his profits as I left in of my profits. Our original written contract provided that I was to furnish money to buy additions to the stock and that I was to furnish money to discount the bills. 'I was to furnish the money in case we needed to furnish any.' The business was to sustain itself. I never furnished any money except the original Sibert stock, amounting to $3261.41. All of the other money that went into the partnership business was contributed by the two partners out of the profits of the business. 'Yes, sir, that was the way the business was to grow, by equal contributions.' 'By THE COURT: And that was the way it was to grow? A. Yes, sir.' After the first year or two I will say that all the new purchases of stock was made out of profits of the business and that continued up to the time of the fire.

"These profits that each of us left in the business from year to year were to mingle with the original contribution of the Sibert stock. The profits only were put into merchandise and the merchandise that the profits purchased was mingled with the original Sibert stock and handled as one stock of goods."

There is no contention but that the value of the Sibert stock put into the partnership at its organization by Adams was $3261.41. It is admitted that the rule of law in reference to dissolution of a partnership is that after the payment of the firm's debts the remainder of the assets shall be divided by first paying to each partner his contribution to the firm and the surplus, if any, divided equally. But it is appellant's theory that the original articles of partnership were modified by subsequent oral agreement, custom, conduct and course of dealing between the parties so that instead of Adams

furnishing the money to replenish, increase and build up the stock and business, the money to be returned to Adams as soon as the partnership had sufficient money on hand with which to repay him, that the business was caused to grow and increase by the contribution of both parties, that is, by both leaving in an equal amount of the profits instead of withdrawing them at the end of each year when the inventories were made; that it was not contemplated in the original contract that Lester was to contribute anything to the capital stock and that he having contributed, by way of leaving in his profits, one-half the difference between the original stock, $3261.41, and $9500, the value of the stock and fixtures at the time of the fire, that in the distribution of the partnership estate the insurance money should be paid *pro rata* according to the contributions made by each to the capital stock, considering the profits that were left in by the partners each year as contributions, or additions to the original capital stock. In other words, that Adams be given the proportion of the $5000 insurance money as his total contribution of $6380.70 bears to $9500, the value of the stock and fixtures at the time of the fire, and that the Lester estate be given that part of the insurance money that $3119.29, the amount contributed by Lester to the capital stock, bears to the value of the stock and fixtures at the time of the fire.

We think that the theory upon which the appellant arrives at her result is faulty and cannot be supported by the facts or the law. First, as to the facts: The original partnership agreement provides that Adams was to contribute the capital together with his labor and services and that Lester was to furnish his labor, services and experience. Lester contributed nothing to the capital stock. It was expressly agreed that he was to be a partner in the profits only; that he was to have no interest in or claim to the stock and fixtures furnished by Adams. The profits were to be determined by an inventory taken each year. While, no doubt, the contract con-

templated that the profits could be withdrawn at that time by the parties, there was nothing in the contract preventing the leaving of the profits in the business, which was done. It was provided that Adams was to buy the goods necessary for the business of the firm. Of course, it was not contemplated that Adams was to advance as capital any money that he was not to have credit for and it was, therefore, provided that he should have the right, but it was not compulsory upon him, to withdraw any money that he might expend for the necessary purchase of stock. He could reimburse himself only at such times as the partnership had money with which to pay him. If he did not reimburse himself before the inventory was taken, then the amount he advanced for the purchase of goods was to become additional capital paid in by him. There was, therefore, more than one method provided in the original contract for the growth of the partnership. In the first place Adams could add to the capital of the partnership by putting cash into the business; in the second place, he could increase the stock of goods out of his own money by consulting his co-partner and not reimburse himself out of the partnership funds but permit the amount advanced for such goods to become capital, and in the third place, Adams, with the consent of Lester, could purchase more goods that were required to replace the original Sibert stock put in by him; in other words, he could have purchased sufficient goods to provide for the growth of the concern and reimburse himself out of the funds of the partnership.

The effect of the conduct of the parties in leaving in a portion of their profits was to take advantage of the last method of increasing the firm's business, for the reason that in case the partners agreed upon buying more goods than were necessary to replace the original Sibert stock, Adams could reimburse himself only from the profits made in the business, as the value of the Sibert stock was to be determined when the inventory

was taken and in taking the inventory the original contribution of Adams was to remain as capital. So we think that there was no subsequent modification of the original partnership agreement by conduct or express agreement. When Adams testified that the leaving in each year of an equal amount of the profits was ''according to our agreement,'' he meant their original agreement was effectuated in this manner because there was no difference in Adams taking his own money in purchasing new goods and then withdrawing the amount expended from the profits of the partnership, and the partnership advancing the money in the first place by the partners leaving in the business the necessary funds to carry it on. His testimony that ''I was to furnish the money in case we needed to furnish any, the business was to sustain itself'' while technically is not in accordance with the written agreement, such a procedure could have been followed under its terms in carrying out that agreement, as we have already indicated. His further testimony ''that the profits only were put into merchandise and the merchandise that the profits purchased was mingled with the original Sibert stock and handled as one stock of goods,'' does not necessarily show that the profits were being left in the business in the way of capital as, of course, the goods purchased would be mingled with those already on hand in any event.

It will be borne in mind that Lester never advanced a cent of money of the capital of this firm, except by leaving in a portion of his profits, if that can be said to be an advancement, which we think cannot be. All of the money that was used in building up and extending the business was that realized from the original contribution of the parties to the enterprise. All of the profits were not taken down and thereafter money advanced by the partners in order to increase the business. When a portion of the profits were left in, on the dissolution of the partnership, whether it can be said that the original contribution of stock and fixtures of Adams be-

came partnership property or not, the general rule under the circumstances, we think, applies. That rule is "in the absence of an agreement or evidence as to the proportions of profit and loss to be divided between the parties, the presumption is in favor of the equality of the shares. It makes no difference that one partner contributes all the capital and the other only services or skill, for the court cannot set a proportionate value upon these respective contributions. . . . This doctrine must be kept distinct from divisions of capital and repayment of capital on winding up. It relates only to dividing profit and loss, but does not alter. the treatment of capital, as if a debt, to be first paid before profits are divided." [1 Bates on Partnership, sec. 181; See, also, In re Chapin v. Long, 205 Mo. App. 414, 418; 30 Cyc. 691, 694; 20 R. C. L., p. 1022, sec. 264; 22 Amer. & Eng. Ency. of Law (2 Ed.), 86, 87; 1 Bates on Partnership, sec. 812, pp. 857, 858; Norman v. Conn, 20 Kan. 159.]

From what we have said the judgment of the lower court is correct and it is, therefore, affirmed. All concur.