[No. 20085.   Department Two.   February 1, 1927.]

J. M. Brewster et al., Appellants, v. John Mattson, Respondent.[1]

[1] Partnership (24, 32)—Accounting as to Firm Business—Actions—Evidence. In a partnership accounting between contractors, a partner should not be charged with the amount in which he discounted warrants, where it was necessary to finance the work and other finance would have been at the same expense.

[2] Bailment (1)—Partnership (25)—Elements of Bailment—Compensation of Partner for Use of Property. There was a bailment, rather than the furnishing of capital, where a contracting partner furnished a steam shovel to be used on the job, free from rent; hence he is not entitled to compensation for depreciation resulting from ordinary wear and tear.

[3] Bailment (3)—Partnership (25)—Care and Use of Property—Compensation of Partner—Taxes on Property Furnished. In such a case, the partnership, as bailee of the steam shovel, would not be liable for taxes charged against the outfit during the prosecution of the work for which it was bailed or leased.

[4] Partnership (24)—Accounting—Liability for Expense. In an action for a partnership accounting, a partner is not entitled to a credit for the cost of auditing the books, made at his instance alone after suit for the purpose of preparing for the trial.

[5] Same (24)—Accounting—Compensation—Credits — Expenses. In a partnership accounting, a partner is properly credited with the amount of a liability that he had incurred to release a tax lien against a steam shovel outfit belonging to his copartner to be used on the job, the same being intimately connected with the partnership undertaking.

Appeal from a judgment of the superior court for King county, Jones, J., entered January 4, 1926, upon findings in favor of the defendant, in an action for partnership accounting, tried to the court. Affirmed.

*O. B. Setters* and *George L. Spirk,* for appellants.
*Riddell & Brackett,* for respondent.

[1]Reported in 252 Pac. 689.

PARKER, J.—The plaintiffs, Brewster and Peterson, seek an accounting by the defendant, Mattson, and recovery of an alleged balance due from him as their share of the alleged net profits, the fruits of a partnership or joint adventure between Peterson and Mattson in the performance of certain street improvement work for the city of Seattle. Brewster became a party plaintiff because of an assignment to him of Peterson's interest in the profits of the undertaking. The case, being of equitable cognizance, proceeded to trial in the superior court for King county sitting without a jury, resulting in findings and decree favorable to Mattson, from which Brewster and Peterson have appealed to this court. For the purpose of determining the rights of the respective parties, the controversy is to be viewed as being practically wholly between Peterson as plaintiff and appellant, and Mattson as defendant and respondent.

On June 30, 1922, Mattson was awarded and entered into a large street improvement contract with the city of Seattle. Seventy-five per cent of his compensation therefor was to be paid by local improvement fund warrants or bonds, and twenty-five per cent of his compensation therefor was to be paid by general fund warrants. On August 31, 1922, Mattson and Peterson entered into a partnership or joint adventure contract, looking to the performance of this improvement contract, reading as follows:

"This agreement made and entered into, in duplicate, this 31st day of August, 1922, by and between John Mattson, of Astoria, hereinafter referred to as party of the first part and Andrew Peterson, Seattle, Washington, hereinafter referred to as party of the second part, Witnesseth:

"That whereas the said John Mattson, party of the first part, has entered into a contract with the city of Seattle, for the paving and grading of portions of what

is known as the West Marginal Way in said city; which contract will hereinafter be referred to as the contract.

"Now, therefore, it is agreed by and between the parties hereto that: in consideration of services rendered or to be rendered by said party of the first part in financing the operations of said contract and by said Andrew Peterson, party of the second part, in furnishing all of his outfit as shipped from Astoria, for the use of said contract as needed, such outfit including steam shovel, locomotives, rails, dump cars, scrapers, wagons, blacksmith's tools and all other miscellaneous outfit included with the same. It is hereby agreed in consideration of the services of the first party and the use of said outfit free from rent by the second party that each of the parties hereto mutually agree that in consideration of the foregoing: that all of the profits derived from said contract, or losses such as may be sustained by said contract, or growing out of the same, shall be divided or borne by the parties hereto equally both as to profits or losses.

"Any equipment or supplies which shall be bought after the beginning of this contract on or after July 26, 1922, is to be paid for equally by the parties hereto, and any such equipment or supplies remaining at the termination of the work under this contract shall be divided equally at said termination. It is agreed that the interest on all money necessary to be borrowed or used in any way to finance the contract, or to pay payrolls, or to buy supplies, and also the cost of the contract bond shall be divided equally between the parties hereto. All labor paid for and all materials bought shall likewise be divided equally amongst the parties hereto. The said Andrew Peterson is to receive a salary of two hundred dollars ($200) per month, to be charged to the contract while continuing on the work and during the performance of this contract, but only while continuing on the work. Any necessary traveling expenses incurred by the said John Mattson shall also be charged to the contract.

"It is agreed that all of the expense incurred in repairing the outfit, preparing same for shipment,

shipping the same, also the freight charges thereon from Astoria to Seattle, also cost of feeding horses while awaiting shipment and on work shall also be considered part of this contract and shall be divided equally as to cost between both parties hereto.

"In witness whereof, the said parties have affixed hereunto their hands and seals the day and year first above written.

(Signed)     "John Mattson,
                      Party of the First Part.
(Signed)     "Andrew Peterson,
                      Party of the Second Part."

A short time prior to the date of this partnership contract, but manifestly in contemplation thereof, Peterson's outfit was shipped from Astoria, Oregon, to Seattle, and work upon the improvement contract was commenced. The work was prosecuted to completion, with some additional extra work incidental thereto, for all of which the city made payments from time to time aggregating approximately $375,000, in local improvement fund warrants or bonds and in general fund warrants. Mattson, having charge of the finances of the undertaking, borrowed funds from time to time, discounted the local improvement fund warrants and bonds, cashed the general fund warrants, received for the benefit of the partnership from the sale of wasted earth and some other minor sources approximately $25,000, and re-paid the borrowed funds and the other expenses incurred in the prosecution of the work.

[1] It is contended in behalf of Peterson that the trial court should have charged Mattson with $23,545, the amount of discount upon the local improvement warrants and bonds sold by him at a discount, aggregating that amount. The argument seems to be that, while Mattson was authorized to borrow money and pay interest therefor from the proceeds of the part-

nership undertaking, in order to finance the undertaking as the work progressed, he had no authority to finance it by discounting the local improvement warrants or bonds. It seems plain from the evidence that, had Mattson not discounted the local improvement fund warrants and bonds, he would have had to incur in the borrowing of money to finance the undertaking as large, or even larger, expense than the aggregate of the discount at which he sold the local improvement fund warrants and bonds. And it also seems plain from the evidence that, from the beginning, it was contemplated that Mattson was to sell the local improvement fund warrants and bonds which were to be received from the city for the work, and thus reduce such warrants and bonds to money. Indeed, the evidence shows that the bid of Peterson for the contract was made in view of such warrants being discounted at substantially the same amount as Mattson did discount them. We do not understand it to be claimed in behalf of Peterson that Mattson sold the bonds at any larger discount than the market value thereof actually called for; in other words, that the bonds were sold for less than their real market value. Indeed, we think the evidence would not at all support any such contention.

There seems to be some contention made in this connection that Mattson agreed to himself take the bonds at par and account to the partnership for their face value as so much money. But we think there is no evidence whatever lending any substantial support to such contention. If Mattson had not reduced the local improvement fund warrants and bonds to money and paid the expenses of the prosecution of the work, including the payment of the loans made, the partnership would still be indebted, either for the direct expense of the prosecution of the work or for loans that would have been necessary to pay such indebtedness,

in sums aggregating in amount somewhere between two and three hundred thousand dollars. It seems clear to us that the trial court did not err in refusing to make this claimed charge against Mattson in the accounting.

[2] It is contended in behalf of Peterson that the trial court should have allowed him a larger amount for necessary repairs to be made to his steam shovel upon its return to him. The evidence, we think, supports the view entertained by the trial court that five hundred twenty-five dollars is a fair allowance for such necessary repairs to place the steam shovel in as good condition as when it was put upon the work, aside from ordinary wear and tear. Some further contention is made in this connection that the partnership should be held for depreciation of the steam shovel by ordinary wear and tear, as though it were a part of the capital of the partnership. The steam shovel was not furnished as a part of the capital, as we view the situation; but was furnished by way of bailment to be used for a particular purpose, the title remaining exclusively in Peterson. This view, we think, is rendered plain, particularly, by the free rent provision of the partnership contract, and also supported by Peterson's salary provision. These special provisions, we think, render this particular question distinguishable from capital furnished an ordinary partnership, having in view division of profits alone as the respective partners' compensation for services performed for the partnership. We are of the opinion that the furnishing by Peterson of his outfit, under the circumstances here shown, was a furnishing of his outfit by way of bailment, expressly "free from rent," and that therefore he is not entitled to compensation for depreciation of any portion of the outfit which is the result of ordinary wear and tear. 6 C. J. 1114.

[3] It is contended in behalf of Peterson that the

partnership should be charged with taxes accruing against Peterson's outfit while being used in the carrying on of the partnership undertaking. This contention, like the one last above noticed, seems to be rested upon the theory that the outfit became a part of the capital of the partnership. We are of the opinion that this contention cannot be sustained. We are unable to see that the partnership was liable to reimburse Peterson for taxes charged against his property, to wit, his outfit used in the prosecution of the partnership work, any more than any bailor or lessor should be so relieved of, or reimbursed for, taxes charged against the bailed or leased property, in the absence of an express contract therefor.

[4] Contention is made in behalf of Peterson, but very briefly presented to us, that he is entitled to a credit against the partnership of four hundred forty-one dollars, expended by him in the employing of an expert accountant to audit the books of the partnership. This work was done, so far as we can determine from this record, at the instance of Peterson alone after the commencement of this action, and manifestly for the purpose of preparing for trial thereof. We cannot see that the trial court erred in denying this claim of Peterson.

[5] When Peterson's outfit was about to be removed from Astoria, Klatsop county, Oregon, to be shipped to Seattle, the sheriff of Klatsop county seized it for taxes which had been there levied against it. In order to secure the release of the outfit from such seizure, Mattson, at the request of Peterson, promised the authorities of Klatsop county that he, Mattson, would be personally liable for the taxes chargeable against the outfit. The outfit was then released and shipped to Seattle, thus enabling the work to commence and proceed as contemplated by the partnership agree-

ment.  Thereafter, while this action was pending, Klatsop county obtained a personal judgment against Mattson for the amount of the taxes, with penalty and interest.  That judgment apparently remains unsatisfied, but Mattson is personally liable thereon and has property in Klatsop county sufficient to satisfy it.  In the accounting here in question, the trial court allowed Mattson a credit for the amount of the taxes so promised to be paid by him, fixing the amount equal to the amount of taxes and penalty due at the time Mattson made that promise, but not allowing him subsequently accruing interest, penalty and costs, and charged the amount so credited to Mattson against Peterson, treating this tax controversy as directly incident to the partnership undertaking, because of Peterson's request to Mattson and Mattson's compliance therewith in so securing the release of Peterson's outfit from the seizure made by the sheriff of Klatsop county.  We think that the court made proper disposition of this controversy, and that it was so intimately connected with the partnership undertaking as to warrant the court in disposing of it in connection with the accounting here drawn in question.

Several other items of debit and credit are drawn in question.  As we view them, however, none of them involves other than questions of fact, and we deem it sufficient to say with reference thereto that the trial court seems to us to have painstakingly and correctly disposed of all of them.  The record of this case is very voluminous and much involved.  We are unable to see that the trial court has failed to correctly dispose of each question presented to it touching the accounting between the parties.  We conclude that the decree should be in all things affirmed.  It is so ordered.

MACKINTOSH, C. J., TOLMAN, BRIDGES, and ASKREN, JJ., concur.