THEODORE BAUM, APPELLANT AND CROSS-APPELLEE, V.
HAROLD G. MCBRIDE, APPELLEE AND CROSS-APPELLANT.
40 N. W. 2d 649

Filed January 6, 1950. No. 32704.

*F. J. Reed,* for appellant and cross-appellee.

*Mothersead, Wright & Simmons,* for appellee and cross-appellant.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal by Theodore Baum, plaintiff, from an order of the district court for Scotts Bluff County establishing the rights of the partners to the assets of the partnership of the McBride Potato Company. This court has previously affirmed an order holding it was a fifty-fifty partnership and ordered a dissolution thereof. See Baum v. McBride, 143 Neb. 629, 10 N. W. 2d 477. Harold G. McBride, defendant, has cross-appealed.

On November 7, 1942, O. P. Burrows was appointed referee to take charge of and liquidate the assets of the partnership. This he did by sale held on October 23, 1943. According to his reports he received the sum of $16,100.55 for the assets of the partnership that came into his possession. After the mandate of this court came down in Baum v. McBride, *supra,* Auburn H. Atkins was appointed referee to try the issues affecting the rights of the parties thereto and did so, making his report thereof to the court. This report, as amended, was approved by the court and judgment entered accordingly. It is from the entry thereof, after both parties had filed and had motions for new trial overruled, that this appeal and cross-appeal were taken.

Appellant will herein be referred to as Baum and appellee as McBride.

This action, being in its nature equitable, comes under the provisions of section 25-1925, R. R. S. 1943, and is here for review de novo.

As stated in Callahan v. Prewitt, on rehearing, 143 Neb. 793, 13 N. W. 2d 660: "It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action." This principle is not applicable to the issues before us for the trial court, in the original trial, expressly limited the issues to the question of whether or not there was a partnership and reserved the question of the rights of the parties to the proceeds, and we so limited our opinion. See Baum v. McBride, *supra*.

The evidence establishes that the partnership began about September 1, 1939. Baum testified: "He (McBride) said that we would put everything we had together and start in the potato deal." Baum had no property to put in the partnership but was to secure sufficient financial backing to enable it to carry on its business. This he did through his father.

The record contains no evidence that any agreement was ever made or understanding had between these parties, at the time they entered into this partnership, of how the capital furnished by each of the partners should be distributed in case of a dissolution of the partnership. Under this factual situation we find the following principles applicable to the capital furnished to the partnership by McBride at the time of the formation thereof:

"It is a general rule that capital furnished by any partner, in the absence of agreement to the contrary, is a debt owing by the firm to the contributing partner, and necessarily is to be repaid him, if the firm assets are sufficient after paying the firm liabilities to out-

siders." In re Chapin v. Long, 205 Mo. App. 414, 224 S. W. 1012.

"But where, as is usual in an ordinary mercantile partnership, a partnership is created not merely in profits and losses, but in the property itself, the property is transferred from the original owners to the partnership, and becomes the joint property of the latter; a corresponding obligation arises on the part of the partnership to pay the value thereof to the individuals who originally contributed it; such payment cannot indeed be demanded during the continuance of the partnership, nor are the contributors, in the absence of agreement or usage, entitled to interest; * * *." Whitcomb v. Converse, 119 Mass. 38, 20 Am. R. 311.

As stated in Adams v. Hubbard, 221 Pa. 511, 70 A. 835, in quoting from 22 Am. & Eng. Ency. of Law (2d ed.), pp. 86 and 87, as follows: " 'Where a partnership is dissolved and its affairs are wound up, there must be a return of the firm capital to the partners contributing it, in order that there may be a distribution of the profits. Each partner's contribution is regarded as a firm debt to such partner, which must be repaid before there are any profits to be divided. Where one partner has advanced capital in excess of another, the amount advanced is a preferred claim upon the property of the firm. The distribution of capital upon dissolution is in the same proportion in which such capital was furnished.' "

As stated in Newman v. Newman, 145 Tex. 433, 198 S. W. 2d 91: "Neither her pleadings nor those of the defendants alleged a special agreement taking the partnership arrangement out of the general rule that upon dissolution, where one has contributed capital and another services, the one contributing the capital is entitled to withdraw its value."

See, also, 40 Am. Jur., Partnership, § 348, p. 373; 47 C. J., Partnership, § 861, p. 1172; and Neudecker v. Kohlberg, 3 Daly (N. Y.) 407.

In this respect we will not consider the assets and liabilities of the potato spraying partnership of McBride and Baum, which assets and liabilities were taken over and absorbed by the partnership here involved, for the reason that McBride and Baum were the only partners therein and on a fifty-fifty basis, the same as here. Likewise, we will not consider the individual cars of the partners as any part of the partnership. While these cars were used by the partners in the business and the operation and upkeep thereof, while so used, were paid for out of partnership funds, nevertheless, the ownership was individual and the payments thereon, when made by the partners from partnership funds, were and herein will be charged to each of the partners as funds received from the partnership.

The evidence establishes that on September 1, 1939, when the partnership began, it took over and operated under the name of "McBride Potato Company," which trade name had previously been used by McBride in connection with his business. When the partnership started operating it took over that account in the bank. McBride then had on deposit therein the sum of $86.60. The partnership also took over and used certain personal property of McBride which he had been using while individually operating the business of buying and selling potatoes prior to September 1, 1939. The personal property so taken over consisted of two potato graders worth $250 each and office and warehouse equipment, which included several sets of scales, two typewriters, two desks, chairs, filing cabinets, etc., reasonably worth $250. The partnership also took over from McBride 21 bales of printed bags worth $62.35 per thousand and 50 pounds of twine worth 30 cents per pound. The evidence does not show the number of bags in each bale but apparently they held 1,000 bags each as it was computed on that basis and Baum takes no exception to the computation. These bags were worth $1,309.35 and the twine $15.

Prior to September 1, 1939, McBride had entered into contracts for the future delivery of potato bags in the total of 249,000. These contracts had been entered into as follows: December 1937, 14,000; October 1938, 75,000; February 1939, 80,000; and July 1939, 80,000. The price of bags contracted for future delivery is determined at the time the contract is entered into. The contract price of these bags was between $64 and $68 per thousand. They are paid for when delivered. These contracts were turned over to the partnership. At that time the market value had gone up and there is evidence that at the time they were turned over to the partnership the bags had increased an average of $24 per thousand. The bags so contracted for were subsequently delivered to the partnership and paid for out of partnership funds but at the original contract price. The increase in the market value of these bags at the time the contracts therefor were turned over to the partnership belonged to McBride and he is entitled to the same as capital invested in the partnership. This amount we find to be in the sum of $5,976.

The evidence establishes that McBride invested $8,136.95 of capital in the partnership at the time of its organization and that he is entitled to a credit for that sum.

When the partnership started operating McBride had charge of the business and took over the managment thereof. It was agreed by the partners that McBride's wife should keep the books, which she did. The arrangement continued until about April 13, 1942, when Baum was ousted and McBride took over the control of all the partnership assets and claimed to be the owner thereof.

It is ordinarily true, as stated in Sweatt v. Johnson, 97 Vt. 177, 122 A. 501: "* * * where a partner sues his co-partner for an accounting the burden of producing evidence on which the full account of the partnership can be stated is primarily upon the plaintiff, and if he cannot furnish sufficient evidence to enable the court

to state the account his suit necessarily fails. Ashley v. Williams, 17 Or. 441, 21 Pac. 556; Maupin v. Daniel, 3 Tenn. Ch. 223; Hall v. Clagett, 48 Md. 223; Slater v. Arnett, 81 Va. 432; Davidson v. Wilson, 3 Del. Ch. 307; Simpson v. Gernandt, 98 Neb. 330, 152 N. W. 549; Oglesby v. Thompson, 59 Ohio St. 60, 51 N. E. 878; Gay v. Householder, 71 W. Va. 277, Ann. Cas. 1914 C, 297; Slaughter v. Danner, 102 Va. 270, 46 S. E. 289." However, where as here, one partner is in control of the books and has managed the business, he is in the position of a trustee and must make a proper accounting accordingly. See Sweatt v. Johnson, *supra*. As stated in Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525: "It is the duty of a partner to account to the partnership for any benefit, and hold as trustee for it, any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use of its property."

Applying these principles to the record before us, we find that from the time the partnership started doing business until about April 13, 1942, when Baum was ousted therefrom, Baum received $7,252.58 therefrom and McBride $14,852.60. However, McBride should be given credit for $416.14 because his money in that amount was deposited to the partnership account during the summer of 1941 and also for $136.04 because he paid bills of the partnership in that amount during this same period. This leaves McBride charged with having received a net of $14,300.42 from the partnership during this period. Baum also contends that McBride sold a contract for the purchase of 15,000 potato bags, which contract was property of the partnership, and failed to account for the $375 he received from the sale thereof. The record shows this money was received by the partnership and deposited to its account on June 13, 1941.

When McBride ousted Baum and took over the partnership assets he caused to be removed from the Mitchell warehouse some 61,962 potato bags of various sizes.

These potato bags were mostly new. The evidence establishes they were reasonably worth $7,968.98, with which amount McBride should be charged. McBride thereafter used $431.01 of the funds of the partnership. He also stayed in possession of the warehouses of the partnership located at Mitchell and Gering and operated them during the potato season of 1942-1943, using the equipment therein and all the personal property of the partnership during the time he was in possession thereof. We find the reasonable value of the use of this property for the period McBride so used it to be $4,500. In determining the amount of this charge we have taken into consideration the ordinary wear and tear thereon caused by its use, also, the damage and breakage of which Baum complains and such items as he contends are missing, and have made the charge accordingly. We have also made no charge against Baum for the few small items of which he was in possession but have considered that fact in making the total charge against McBride. The evidence also establishes that after April 13, 1942, there not being sufficient funds of the partnership available, McBride paid $1,045.52 of partnership obligations.

There is reference to possible claims for damages arising out of the 1941-1942 business of the partnership for which McBride never accounted. While there is evidence to the effect that claims usually exist at the end of the season, however, there is no evidence here that any did exist, the amount thereof, or that any amount was ever collected therefrom. In the absence of more specific proof nothing is allowable for this item.

A summation of these items shows that McBride has received sufficient of the assets of the partnership to return to him the capital he invested therein and an amount in the sum of $10,765.36 in excess of that received from the partnership by Baum. Baum, in order to adjust this excess received by McBride, is entitled to half of that amount from McBride.

The question arises as to whether or not interest should

be charged McBride on the excess amount of partnership funds of which he has had the use. As stated in the annotations to 66 A. L. R. at page 23: "* * * ordinarily in the settlement of partnership accounts, interest should not be allowed until after a balance is struck on a settlement between the partners, unless there is a different agreement between them, or unless, under the peculiar facts and circumstances, the equities demand that interest be charged." As further stated in the annotations to 66 A. L. R. at pages 41 and 43: "If there is an unreasonable delay in settling the partnership affairs after dissolution or termination of the partnership, or an unjustifiable refusal to account, a partner who is in possession of the funds of the firm and is responsible for the delay or refusal may, on equitable grounds, be charged with interest on such funds from the time when he should have accounted. * * * Especially where a partner who, on dissolution of the partnership, holds the assets of the property of the firm and is intrusted with the duty of winding up its affairs, not only unreasonably neglects to settle the account, but uses the firm property in his private business, he is chargeable with interest, as between himself and his copartner." See 47 C. J., Partnership, § 978, p. 1255; Porter v. Long, 136 Mich. 150, 98 N. W. 990; and Johnson v. Hartshorne, 52 N. Y. 173.

Here McBride has, by his conduct, sought to deprive Baum of his rights in and to the partnership assets and for that purpose took possession thereof and refused and failed to account therefor. Under these circumstances we find that he should pay interest on the amount which he received and held in excess of his share at the rate of six percent from April 13, 1942, and that judgment for such amount should be entered against him and in favor of Baum.

The trial court is directed to divide the $16,100.55 received by the referee from the sale of the partnership assets equally between Baum and McBride and to order the payment to Baum of his share thereof. The trial

court is further directed to order sufficient of McBride's share thereof to be used to satisfy the sum of $5,382.68 with interest at six percent from April 13, 1942, which amount is owing by McBride to Baum, in order to settle their partnership account.

This litigation has all been necessary because of McBride's denial that a partnership existed and his refusal and failure to make a proper accounting of the partnership assets which had been under his management and of which he took complete charge. Under these circumstances all costs of this proceeding, including those incurred by the two referees and the fees allowed them for their services, are taxed to McBride. In this respect we have not overlooked Baum's request for an attorney's fee. As stated in County of Sarpy v. Gasper, 149 Neb. 51, 30 N. W. 2d 67: "Only when provided for by statute can an attorney's fee be allowed and taxed as costs." No statute has been cited authorizing such allowance and consequently the request must be denied.

In view of the foregoing the decree of the trial court is reversed with directions to enter decree in accordance herewith.

REVERSED WITH DIRECTIONS.