Claude BASS, Plaintiff-Appellant,

v.

Ben DAETWYLER, Defendant-Respondent.

No. 7553.

Springfield Court of Appeals.

Missouri.

Sept. 24, 1957.

Motion for Rehearing or to Transfer Over-
ruled Oct. 8, 1957.

Jim Poynor, Joplin, for plaintiff-appellant.

Combs & Combs, Lamar, for defendant-respondent.

STONE, Judge.

In this action for a partnership accounting, plaintiff, Claude Bass, appeals from the judgment of $229.10 entered in his favor against defendant, Ben Daetwyler. Plaintiff and defendant admittedly entered into an oral partnership agreement on April 30, 1953, "to continue for one year from said date." The business of the partnership encompassed "raising and selling eggs, turkeys, cattle, sheep, hogs and feed," but the major activity was in turkeys and turkey eggs. Defendant furnished his farm near Lamar, Missouri, "and the equipment that was out there" when the partnership was formed. Plaintiff "was to do all the work" and "after all expenses were paid"

'the profits were to be divided equally. We find no evidence of sharp controversy or serious dispute between the partners prior to June, 1954, when the partnership operation was terminated (several weeks after the end of the contemplated one-year term) by sales of "between $5,500 and $6,000 worth of turkeys" and about "$1,900 worth of eggs." However, plaintiff and his family thereafter continued to occupy a four-room house on defendant's farm for three or four months; and, for reasons not developed in the record, feeling was engendered which resulted (as defendant said) in plaintiff's warning that "if I (defendant) would come on (the farm) he was going to whip me every time he saw me."

In his petition filed on August 19, 1954, plaintiff stated that he held $821.80 belonging to the partnership but that defendant, who had kept all partnership records, had made no accounting "although the operational profit is in excess of $13,000." In his answer, defendant averred that the net partnership income had been $3,725.18, but that plaintiff had received substantially more than his half of such income and was indebted to defendant in the sum of $914.03. Defendant also sought "damages" aggregating $1,000 on certain claims which we pass without discussion because defendant has not appealed from the judgment of the trial court which disallowed those claims, except for $90 charged to plaintiff for his occupancy of the house on defendant's farm after termination of the partnership. By agreement of the parties, the trial court appointed Gordon R. Boyer, Esq., as referee to take evidence and report his findings and recommendations. In due time, the referee's report was filed, all exceptions thereto were overruled, the report was approved and confirmed in its entirety, and judgment was entered in accordance therewith.

The partners were the only witnesses at the hearing before the referee. Defendant frankly stated that "all the business end of it (the partnership) I was to do," readily conceded that he had opened no bank account for the partnership, and quickly agreed that he had only one personal bank account in which individual and partnership funds had been commingled. At the outset of the hearing, it was stipulated that "the gross income of the partnership was $27,274.24." Defendant then testified at length concerning the "inventory used" or capital furnished by him to the partnership and concerning the numerous items of alleged partnership expense claimed to have been paid or assumed by him. Most of these expense items were evidenced by one hundred fifty-five cancelled checks drawn on defendant's bank account and offered as exhibits, but a few of those items had been (so defendant said) paid in cash or assumed by him. Plaintiff's brief direct examination pertained *only* to certain claims by defendant which were disallowed.

The referee and the trial court found the net profit of the partnership to have been $6,466.66 by deducting, from the gross partnership income of $27,274.24, (a) "inventory used" or capital of the aggregate value of $748.08 furnished by defendant to the partnership, (b) expense items aggregating $19,412.32 evidenced by cancelled checks, and (c) expense items aggregating $647.18 paid in cash or assumed by defendant. Against plaintiff's half of the net profit, to-wit, $3,233.33, the referee and the trial court made charges aggregating $2,853.33, including (a) $1,927.53 which, as was stipulated, plaintiff "has drawn," (b) $821.80 of partnership funds admittedly held by plaintiff, (c) $7 for one old turkey and $7 for two used tires concededly used by plaintiff personally, and (d) $90 for plaintiff's occupancy of the house on defendant's farm after termination of the partnership. Thus arriving at a balance of $380 owing to plaintiff, the trial court further charged plaintiff with one-half of the costs or $150.90, and entered judgment for him in the sum of $229.10.

Plaintiff's first complaint on appeal is that the "inventory used" or capital furnished by defendant should not have been deducted from the gross income of the

partnership because (a) there was no evidence of an express agreement "that the inventory should be replaced" and (b) there was no competent evidence "as to cost or the reasonable market value of the items charged," i.e., 500 poults, 300 bushels of oats, 3 old turkeys and 2 sheep. However, in the absence of an agreement to the contrary, capital furnished by defendant was a debt owing by the firm to him, which should have been paid before profits were determined and distributed;[1] and, in view of the liberality of our courts in permitting the owner of personal property to testify as to its value, defendant's testimony as to the cost or the value of each item of the "inventory" clearly was admissible[2] and, being acceptable to the trier of the facts, supported his finding (approved by us) that defendant's capital contributions to the partnership were of the aggregate value of $748.08. We cannot honor plaintiff's contention that, in any event, defendant should receive only his actual cost of acquisition, *prior to formation of the partnership,* of 300 bushels of oats contributed to the partnership. The referee properly credited defendant with the reasonable market value of the oats at the time of contribution, i.e., when the partnership was formed. Compare Baum v. McBride, 152 Neb. 152, 40 N.W.2d 649, 652–653(6). Contrast Filbrun v. Ivers, 92 Mo. 388, 4 S.W. 674, where one partner

sought to profit by purchase of a note endorsed by the partnership.

Plaintiff also assigns error in the admission into evidence of one hundred forty-two of the one hundred fifty-five cancelled checks offered by defendant,[3] and in the allowance, as partnership expenses, of all of the payments evidenced by those checks, excepting only items aggregating $123.85. Although other objections (some of which will be noted, infra) were made to certain of the cancelled checks, the principal objection repeatedly interposed by plaintiff was that invoices or "paid statements" were not attached to the checks; and, plaintiff's primary insistence here is that, therefore, the checks "were not the best evidence of the matter sought to be proved" and constituted nothing more than "speculative and conjectural" evidence.

■■ Defendant was entitled to reimbursement (by credit in the partnership accounting) for all payments made and obligations personally incurred by him in the ordinary and proper operation of the firm business.[4] But, with respect to each item for which defendant sought credit, his problem of proof was two-fold, namely, (1) to establish his payment (or his personal obligation for payment) of such item, and (2) to show that such item was incurred in the ordinary and proper operation of the

1. Sections 358.400 and 358.180(1); Chapin's Estate v. Long, 205 Mo.App. 414, 224 S.W. 1012, 1013(3, 4); In re Adams & Lester's Estate, 215 Mo.App. 606, 257 S.W. 142, 145(2); 40 Am.Jur., Partnership, § 348, p. 373; 68 C.J.S. Partnership § 391a, p. 904. See also Sinman v. Mezoff, 327 Mass. 285, 98 N.E.2d 263, 264 (2); Baum v. McBride, 152 Neb. 152, 40 N.W.2d 649, 651(4); Rice v. Watkins, 85 Cal.App.2d 44, 191 P.2d 810, 814(7); Newman v. Newman, 145 Tex. 433, 198 S.W.2d 91; Burnett v. Hopwood, 187 Minn. 7, 244 N.W. 254, 256. (All statutory references herein are to RSMo 1949, V.A.M.S.)

2. State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, 72; State v. Brewer,

Mo., 286 S.W.2d 782, 783; Stockton v. Tester, Mo.App., 273 S.W.2d 783, 788 (14); Baird v. Ellsworth Realty Co., Mo. App., 265 S.W.2d 770, 774(11); annotation 37 A.L.R.2d 967, 974, 1004.

3. Of the 155 checks offered by defendant, the referee received 149 checks in evidence; and the only checks, to which plaintiff interposed no objection, were 7 checks for the aggregate amount of $2,490.76 issued for partnership purchases of turkey eggs and poults.

4. Sections 358.180(1) and 358.400(2) (b); Greaves v. Huber, Mo.App., 235 S.W.2d 86, 91–92(9); 68 C.J.S. Partnership § 82, p. 521. See also Lyons v. Murray, 95 Mo. 23, 29, 8 S.W. 170, 171(3).

firm business or, as otherwise stated, was properly chargeable as partnership expense. Since any evidence (not excluded by some rule of policy or principle of law) tending to make the proposition of payment either more or less probable was competent,[5] defendant's cancelled checks clearly were relevant and admissible upon the issue of payment.[6] And, upon that issue, they were not rendered inadmissible simply because they were not accompanied by invoices or "paid statements," particularly in view of the fact that even "paid statements" from third parties (in effect, receipts) would have been merely hearsay declarations and would not have been competent evidence of the payments purportedly acknowledged thereby.[7]

■■ Of course, whether the payments evidenced by defendant's cancelled checks were for items properly chargeable as partnership expenses was not established by the checks themselves, but rather depended upon defendant's credibility and the weight and value of his *oral* testimony concerning the items for which the checks were issued. Even where determination of factual issues in court-tried actions for accounting depends upon *conflicting* verbal evidence, our appellate courts point out that due deference should be accorded to findings of the trier of the facts.[8] A fortiori, with instant defendant's oral testimony concerning the items allowed as partnership expenses standing *uncontradicted* in any material particular, it would be a work of superarrogation for us to reject the *factual* findings of the able and conscientious referee, insofar as they are bottomed upon his acceptance of, and are conformable to, such *uncontradicted* testimony. Having nevertheless carefully considered the entire record (including the numerous exhibits) in the discharge of our duty to review the case de novo [McKinley v. Durbin, Mo.App., 231 S.W.2d 286, 290 (5)], we accept and adopt the factual findings of the referee, as incorporated in the judgment of the trial court, with respect to all items of partnership expense for which defendant was allowed credit, *excepting only* the following:

■ 1. There was no evidentiary basis for allocation and allowance, as a partnership expense, of one-half of thirteen monthly telephone bills paid by defendant for local telephone service at his home in Lamar. This item of $26.58 should not have been allowed as partnership expense.

2. Apparently by reason of a typographical transposition of figures, the referee and the trial court credited defendant with *$221.75* for payments made for "labor, breeding fees and repairs," as evidenced by thirteen cancelled checks identified and received collectively as Exhibit 21. This allowance was excessive to the extent of $99 because the sum total of the payments evidenced by the aforesaid checks was *$122.75.*

■ 3. Defendant should not have been credited with $85.28 for payments made by six cancelled checks identified and received collectively as Exhibit 24, including $12.50 to Lamar Township for repairing the road between Lamar and defendant's farm, $44.23 for taxes "assessed

5. Weller v. Weaver, 231 Mo.App. 400, 406, 100 S.W.2d 594, 598(17); 70 C.J.S. Payment § 112, p. 326. See also Albertson v. Wabash R. Co., 363 Mo. 696, 704, 253 S.W.2d 184, 189(6).

6. 40 Am.Jur., Payment, § 85, p. 774; Bracht v. Connell, 313 Pa. 397, 170 A. 297, 301(10). See also Kinney v. Snyder, 184 Or. 418, 198 P.2d 983, 985(5).

7. State v. Howe, 287 Mo. 1, 228 S.W. 477, 479(5); Doherty v. Doherty, 155 Mo. App. 481, 134 S.W. 1112, 1113(3); 40 Am.Jur., Payment, § 289, p. 900; 20 Am. Jur., Evidence, § 947, p. 799. See also Warren v. Curry, 352 Mo. 363, 177 S.W. 2d 472, 473(1, 2).

8. Ewalt v. Hudson, Mo.App., 223 S.W.2d 132, 134(4); Thomas v. Milfelt, Mo. App., 222 S.W.2d 359, 362(1); Baker v. Koontz, Mo.App., 13 S.W.2d 1085(2).

against the farm and the turkeys," and $28.55 for premiums on insurance policies covering "everything out there." Defendant would have been entitled to credit for taxes and insurance paid on *firm* property, but *not* for such payments on his *individual* property, furnished rent-free, to which he retained title. 68 C.J.S. Partnership § 437(d) (2), pp. 982–983; Brewster v. Mattson, 142 Wash. 196, 252 P. 689, 691(3). Contrast Schneider v. Schneider, 347 Mo. 102, 111, 146 S.W.2d 584, 590, where the partnership *had agreed* to pay rent for a building owned by a partner. Since the evidence did not show what defendant in the case at bar had paid for taxes and insurance on firm property, he was entitled to no credit for those items.

Allowance by the referee of expense items aggregating $647.18, which had been paid in cash or assumed by defendant, rested upon and was in conformity with defendant's *uncontradicted* oral testimony concerning those items, and we are in accord with the referee's findings thereon. We have not overlooked plaintiff's specific attack upon the allowance of $294.18 to defendant (included in the items aggregating $647.18) to cover a claim by Morrow Milling Company for infertility of turkey eggs purchased by Morrow from the partnership. Defendant testified, *without contradiction,* that these eggs had been sold under a "guarantee" as to fertility, and that he personally had assumed and agreed to pay Morrow's claim. Defendant's warranty of fertility, under which the eggs had been sold, was binding upon the partnership. 68 C.J.S. Partnership § 154d, p. 595. We do not rule plaintiff's complaint, *first presented on appeal,* that Exhibit 27 (a letter from Morrow to defendant concerning the claim for infertility) "was not properly identified," for an objection to the introduction of evidence, not presented in the trial court, will not be considered on appeal. Hall v. Clark, Mo., 298 S.W.2d 344, 350(14), and cases there cited. However, we note that proof of Morrow's claim and of defendant's assumption of li-

ability therefor did not depend upon Exhibit 27, and that *plaintiff* readily conceded that eggs sold by the partnership "had to be fertile up to a certain percent or you had to make them good."

Turning to the items charged against plaintiff, his initial complaint that the first item so charged should have been $727.33 rather than $1,927.33 is predicated on the contention that $1,200 was paid to him as wages and should have been charged as a partnership expense. However, this is a forlorn theory wholly unsupported by the record, in which we find no mention of "wages" but rather a simple, straightforward *stipulation,* at the outset of the hearing, that "plaintiff Claude Bass has drawn $1,927.53." See Baker v. Koontz, Mo.App., 13 S.W.2d 1085(3). Plaintiff's further assignment that he should have been charged with only one-half of the $821.80 of partnership funds admittedly held by him at the time of hearing, rather than with the entire sum, is without merit. For, in stating accounts between partners, amounts owing by one partner to the firm should not be deducted from the assets of the firm, but from that portion coming to such partner after a balance has been struck. 40 Am.Jur., Partnership, § 347, loc.cit. 373; 68 C.J.S., Partnership, § 437e, p. 983. The charge of $90 for "rent," arising out of plaintiff's occupancy of the house on defendant's farm "for three or four months" after June, 1954, was justified [40 Am.Jur., Partnership § 347, loc.cit. 372] and finds sufficient evidentiary support in the record. Del Commune v. Bussen, Mo.App., 179 S.W.2d 744, 748. In short, plaintiff properly was charged with items aggregating $2,853.33.

Thus, our conclusion is that, in determining the net partnership profit, the referee and the trial court erred only in allowing, as partnership expenses, items aggregating $210.86, namely, (1) $26.58 for local telephone service, (2) an excess of $99 for "labor, breeding fees and

repairs," and (3) $85.28 for taxes, insurance and repairing the road to defendant's farm. With the partnership expenses paid or assumed by defendant (and credited to his account) thus reduced by $210.86, we find that the net partnership profit (increased in like amount) was $6,677.52; that plaintiff's half of the net profit was $3,338.76; and that, after charging plaintiff with items aggregating $2,853.33, a balance of $485.43 is owing to him.

■ The only remaining question is whether one-half of the court costs should have been assessed against plaintiff. The relationship of partners inter sese is a fiduciary one [Schroer v. Schroer, Mo., 248 S.W.2d 617, 619(2); Schneider v. Schneider, supra, 146 S.W.2d loc.cit. 589 (19)], and the cases are legion in which it has been pointed out that a managing partner, who has kept the partnership records, occupies a position analogous to that of a trustee and is charged with the burden of proving the accuracy of such records and of making a faithful and true accounting.[9] Defendant in the instant case not only owned two farms but also was interested financially in Three Brothers Supply Company, a business firm in Lamar. Plaintiff was an unlettered farm worker. As the partner who admittedly handled "all the business end" of the firm, defendant voluntarily assumed the burden of keeping proper and accurate records and of making a prompt and full accounting to plaintiff. The only conclusion reasonably to be drawn from the entire record is that he did neither.

■ We recognize that, as urged by defendant, courts have an inherent, discretionary power to award costs in equity cases, although we note that, where costs have been apportioned or divided between the parties, usually some of the substantial issues have been found for one party and some for the other party.[10] In the instant proceeding, some of the issues were found for defendant only in the sense that some of the credits claimed by him were allowed; but, in our view of the matter, the overriding and compelling factors are that defendant failed and neglected to keep proper and accurate records and that, at the end of a bitterly-contested legal proceeding, a delinquent and recalcitrant partner has been, notwithstanding his positive and continuing avowals to the contrary, adjudged indebted in settlement of the partnership accounts. In the circumstances of this case, we unhesitatingly declare that all costs, both in the trial court and on this appeal, should be assessed against defendant. DuPont v. McLaran, 61 Mo. 502, 511.

The judgment of the trial court is set aside and the cause is remanded with directions to enter judgment for plaintiff in the sum of $485.43, with interest thereon at six per cent per annum from and after February 20, 1956 (the date of the judgment set aside), and to tax all costs against defendant.

McDOWELL, P. J., and RUARK, J., concur.

9. See Wilson v. Moline, 229 Minn. 164, 38 N.W.2d 201, 204–205 (involving a turkey-raising partnership). And, consult also McGinnis v. McGinnis, 274 Mo. 285, 299, 202 S.W. 1087, 1090(5); Baum v. McBride, supra, 40 N.W.2d loc. cit. 653(8); Simich v. Culjak, 27 Wash.2d 403, 178 P.2d 336, 339(1, 2); Stephens v. Stephens, 298 Ky. 638, 183 S.W.2d 822, 825 (8); Thomas v. Winchester Bank, 105 Ky. 694, 49 S.W. 539; Stevens v. Gray, Utah, 259 P.2d 889, 891(2); Hansen v. Hansen, Mont., 297 P.2d 879, 881(1); Sweatt v. Johnson, 97 Vt. 177, 122 A. 501, 504(2, 3); 68 C.J.S. Partnership § 433a, p. 971; Ibid., § 433c, loc. cit. 974.

10. Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552, 555(6); Godwin v. Graham, 360 Mo. 418, 228 S.W.2d 789, 795(13); McKay v. Snider, 354 Mo. 674, 190 S.W. 2d 886, 893(17); Publicity Bldg. Realty Corp. v. Thomann, 353 Mo. 493, 183 S.W. 2d 69, 73(14); Amitin v. Izard, Mo.App., 262 S.W.2d 353; Oldham v. McKay, 235 Mo.App. 348, 138 S.W.2d 735, 740(8).